## Wytheville.

### N. &. W. R. R. Co. v. PRINDLE AND WIFE.

#### JUNE 24th, 1886.

1. WITNESSES—*Husband and wife—Competency.*—By common law (unaltered by Code, ch. 172, sections 21–22), they cannot testify for or against each other. By statute, each may testify in his or her own behalf.

2. IDEM—*Married Women's Act—Damages for injuries to wife.*—Under this act (Acts 1876-7, p. 333), all property acquired by the *feme coverte* during the coverture, *in any of the modes specified in the act,* is her separate estate. She may sue, or be sued, as if she were a *feme sole*, as to h r separate property, or as a sole trader; but her husband must be joined with her. In such suit, she is a competent witness for herself, yet he is not for her. But damages for injuries to wife's person are not within that act, and are not her separate property—he has an interest in them, and in suits to recover such damages, she is not competent to testify.

3. IDEM.—*Hayes and Wife* v. *M. P. A.*, 76 Va. 225, and *Farley* v. *Tillar*, 81 Va. 225, reviewed and *distinguished* from *case at bar*. First was a suit to recover wife's separate property ; second was a suit against wife as sole trader—husband had no interest in subject matter of either. She was competent to testify, otherwise in case at bar.

4. CONSTRUCTION OF STATUTE.—For rules and principles governing construction of statutes, *see opinion of Lacy, J.*

Error to judgment of circuit court of Wythe county, rendered 26th of September, 1885, in the action of trespass on the case wherein Lee Prindle and wife were plaintiffs, and the Norfolk and Western Railroad Company was defendant.

The object was to recover damages inflicted on the wife by the negligence of the defendant company. The jury found

for the plaintiffs, and assessed their damages at $1,000, and the court entered up judgment in accordance with the verdict. At the trial the wife was allowed to testify for the plaintiffs against the objection of defendant. Exception was taken to this and other rulings, and a writ of error and *supersedeas* was obtained by the defendant from one of the judges of this court.

Opinion states the case.

*William H. Bolling*, for the plaintiff in error.

*James A. Walker*, for the defendants in error.

This was an action of case brought by a husband and wife for injuries received by the wife while a passenger on defendant's road. On the trial the wife was examined as a witness on behalf of the plaintiff, and the question of her competency is the first one raised by the record. Such a suit can only be asserted by a joint action. Mr. Minor says, on page 348 of volume I: "There is but one instance where a cause of action, which affects the wife and accrues during coverture, must be asserted by a joint suit, viz: in cases of torts to the person of the wife."

The effect of joining the wife is that if the husband die while the suit is pending, or before the judgment is satisfied, the interest in the subject will survive to the wife, and not to the personal representative of the husband. 1 Minor, pages 352, 356; Schouler on Husband and Wife, sections 142, 328.

At common law the wife is entitled to the beneficial interest in damages for torts to her person. She is the meritorious cause of action, and the husband is only entitled to an interest on the contingency of his reducing the money into possession in his lifetime. The suit is the suit of the wife, and the husband is only joined for conformity. The wife is the party in

interest, and the judgment, when rendered, is her judgment, and survives to her and to her personal representatives, and not to her husband or to his representatives. By the rules of the common law, neither the husband and wife were competent witnesses, because both were parties plaintiff, and because the marital relation prohibited one *consort* from testifying for the other. The statute has removed the first of these impediments and left the second in force. The wife or husband may testify in any suit in which they are parties, in their own favor, but not for or against each other. It is clear that in this case the husband or wife one is a competent witness, but that both are not. The circuit court held that the wife was a competent witness, and in that it committed no error.

Even independent of the "married women's act," we think the statute removing all disqualification on account of the interest of a witness and allowing parties to testify in their own suits, made the wife a competent witness in this case, since she is the real party plaintiff, and since the action survives to her and not to her husband's representatives, and since the action dies with her, if she die before her husband and before recovery.

In this case the original declaration contained a claim for damages for the doctors' bills paid by the husband and for damages to the husband for loss of the society and services of the wife. There was a demurrer on the ground that these things were for damages to the husband—were the subject of a separate suit in his own name—and could not be joined in a suit by the husband and wife for injuries to her person; and the demurrer was properly sustained for these reasons.

But, under the married woman's law, it is provided that all real and personal property acquired by any woman, "whether by gift, grant, *purchase*, inheritance, devise, or bequest, shall be and continue her sole and separate estate." The word *pur-*

*chase* is a technical common law word, as are the words gift, grant, devise, and inheritance. They are technical legal common law phrases, having definite ascertained meanings, and must be taken in the sense and given the construction in which they are used at common law by lawyers, and judges, and text writers of authority. Dwarris on Statutes, 637, 640, 612; *Carpenter* v. *The State*, 34 Am. Dec. 116–41, 107–8. The word purchase is a technical common law word, and means all other methods of acquiring property except by descent or inheritance. 2 Minor, 476–7.

The statute, commonly called the married women's act, should be given a liberal, and not a narrow construction, in order to carry out the evident intent and meaning as well as the policy of the legislature.

LACY, J., delivered the opinion of the court.

In February, 1885, the defendants in error brought their action of trespass on the case against the plaintiff in error for injuries received by the defendant in error, Judy Prindle, while traveling on the road of the plaintiff in error.

The action is by husband and wife, against a common carrier for injuries inflicted on the wife by the negligence of the defendant company. Upon the trial there was a verdict for the plaintiff for one thousand dollars, and judgment accordingly. Upon writ of error to this court, it is assigned as error—first, that the action being as stated above, and the recovery belonging to the husband, the wife was admitted as a witness in the case, and permitted to testify notwithstanding the interest of her husband. On the other hand, it is insisted that the husband has no interest in the suit, but is joined for conformity only; that the interest of the wife does not disqualify her under our act, notwithstanding such interest. Code 1873, ch. 172, sections

21–22. That while under that statute the common law rule as
to the incompetency of husband and wife to testify for or
against each other is expressly preserved; that the husband
could not testify because of the interest of the wife; that while
she is competent to testify, notwithstanding her own interest,
she would not be competent to testify if her husband had any
interest in the suit, but that her husband having no interest,
she is not excluded as a witness.

In the case of *Hayes and Wife* v. *Mutual Protection Associa-
tion*, 76 Va. 228, this question was considered and discussed by
this court in a case arising as the suit of the wife under the
act known as the married women's act, approved April 4, 1877
Acts 1876–7, p. 333–4), in which this court held the wife compe-
tent to testify, because it was her suit to recover her separate
property, and that her husband had no interest, and was a nom-
inal party only, joined in obedience to the statute, but having
no interest and not liable for costs.

In a late case of *Farley* v. *Tillar*, 81 Va. 275, this court held
that in a suit against a wife who was engaged on her own
account in keeping a hotel, her husband was joined in obedi-
ence under statute cited above, known as the married women's
act, that he was a nominal party only, had no interest in the
subject matter of the suit, and that while the husband could
not testify because of the interest of the wife, she was not dis-
qualified because of her interest in the suit, by reason of the
21st and 22d sections, of chapter 172, of the Code of 1873,
cited above, and not because of her husband's supposed interest,
because, under our statute, it was her separate estate, and her
husband had no interest.

In the first named case, the subject of controversy was on a
policy of insurance, and the amount payable to the beneficiary,
who was a married woman, was held to be the property of such
married woman for her sole and separate use; that it was not

Opinion.

liable to the debts of her husband; *that he had no interest in it whatever* under the act approved April 4, 1877, Session Acts 1876–7, p. 333–4.

In the second named case cited above, the action was against the wife for alleged liabilities as a sole trader, and the husband was held to have no direct interest in the suit, and to be a nominal party only, and in both, as has been said, the wife was allowed to testify. See also *Frank and Adler* v. *Lilienfeld*, 33 Gratt. 377.

These cases seemed to have been covered by the terms of our statute. We must now consider whether, under the said married women's act, the recovery in this case is the sole and separate property of the wife. The property right involved is the chose in action of the wife; so far as a claim for damages is for injuries to the person of the wife, it must be recovered in the joint suit of the husband and wife. It is her suit. But if it is brought during the lifetime of the husband, he must be made a plaintiff with her. It is a suit for the recovery of her damages; when the judgment is recovered, it becomes her chose in action. When the money is paid it is his unless by the statute above referred to, known as the married women's law, it is made her separate estate. If it is by the said act made her separate estate, then the husband has no legal interest whatever in it, and she is not debarred from testifying in a suit concerning it by reason of any interest of his; and he is a party to the suit only nominally, being joined for conformity, the statute so requiring. While on the other hand, if the statute does not so affect it as to make it the separate estate of the wife, the rights of the husband attaching, the wife would be debarred, under the common law rule of evidence; not altered by our law, from testifying because of the interest of the husband.

The second section of the act of April 4, 1877 (Acts 1876–77, p. 334), is as follows: "*All real and personal estate* hereafter acquired by any married woman, whether by *gift, grant, purchase, inheritance, devise or bequest,* shall be and continue her sole and separate estate," &c.

The words " *all real and personal estate*" are the most general, and clearly include the chose in action in question. But it must not only be of a nature to be included within the terms descriptive of the sort of property embraced by the statute, but where the statute has designated the modes by which it must be acquired, by so doing it has excluded all other modes of acquisition, and the statute applies to none other than . such as has been acquired in the prescribed mode.

Under the common law the right of the husband to the wife's chose in action was qualified. It was the husband's, upon condition that he shall do some act while the coverture lasts, to appropriate the chose to himself. If he die before he so reduces it, it survives to the wife. If the wife dies before he so reduces it, it is not his. He has no title to it. It goes, strictly speaking, to her personal representatives. That reduction into possession, which makes the chose absolutely, as well as potentially, the husband's, is a reduction into possession, not of the thing itself, but of the title to it. If the chose in action is made the separate property of the married woman by statute, then the common law rights of the husband in the chose being intercepted and destroyed, it is absolutely hers, and he has no interest in it whatever.

Do the words in our statute, cited above, cover such property or point to such damages as may be acquired by a married woman in an action for a tort, or any wrong done to her? This second section came under judicial consideration and construction, in this court, in the case of *Williams* v. *Lord and Robinson*, 75 Va. 398, when Judge Burks, speaking of the said

section, said: " While the second section secures to her such separate estate in *all* property acquired by her, *after and during marriage,* in either of the modes designated in that section."

" Estate" and "purchase" are among the most comprehensive words in legal terminology. Property in *choses* in action is certainly "personal estate," and the acquisition of such *choses* for a valuable consideration is a "purchase," even in the most restricted legal sense of that term. This interpretation is so obvious and free from difficulty that it needs no support, and admits of no successful contradiction from the adjudications of other States under acts of a similar character, whatever those adjudications may be.

Is there any mode prescribed by our statute for the acquisition of property by the married woman, which will include or point to this chose in action ? If so, then it is the wife's, and the husband has no legal interest. If not, then the husband has a legal interest, under his common law rights. Let us see : The terms are " gift, grant, *purchase,* inheritance, devise, or bequest." Can it be designated by the word *purchase,* that is a term among the most comprehensive known to the law? Mr. Bouvier says : " Purchase is a term including every mode of acquisition of estate known to the law, except that by which an heir, on the death of his ancestor, becomes substituted in his place as owner by operation of law." 2 Wash. 401.

There are six ways of acquiring a title by purchase, namely : by deed, by devise, by execution, by prescription, by possession or occupancy, by escheat. In its more limited sense, purchase is applied only to such acquisition of lands as are obtained by bargain and sale for money or some other valuable consideration. In common parlance, purchase signifies the buying of real estate and of goods and chattels. Webster

defines it to acquire by seeking, to gain, obtain, or acquire. To acquire by any means except descent or inheritance.

In what sense was this word used by the legislature? What was the intention of the law makers? It has been said by the Supreme Court of the United States that "the popular, or received import of words, furnishes the general rule for the interpretation of statutes." *Maillard* v. *Lawrence,* 16 How. 251. And it has been held that statutes are to be interpreted with reference to the principles of the common law in force at the time of their passage, except when the statute itself, or the courts have otherwise determined. *New* v. *Peckham,* 6 How. Pr. Rep. 229; *Rice* v. *M. & N. W. R. R. Co.,* 1 Blatch. 359.

The rules by which the sages of this law, according to Plowden, have ever been guided in searching for the intention of the legislature, are maxims of sound interpretation which have been accumulated by the experience and ratified by the approbation of ages. The resolutions of the Barons or the Exchequer, in *Heydon's Case,* for the sure and true interpretation of all statutes in general, be they penal or beneficial, restricting or enlarging of the common law, four things are to be discussed and considered: "1. What was the common law before the making of the act? 2. What was the mischief and defect against which the common law did not provide? 3. What remedy the Parliament hath resolved and appointed to cure the disease of the Commonwealth? And, fourthly, the true reason of the remedy."

"It was then held to be the duty of the judges, at all times, to make such construction as should support the mischief and advance the remedy, putting down all subtle inventions and evasions for the continuance of the mischief, *et pro privato commodo,* and adding force and life to the cure and the remedy, according to the true interest of the makers of the act, *pro bono publico.*

"To know what the common law was before the making of a statute, whereby it may be seen whether the statute be introductory of a new law, or only affirmative of the common law, is the very lock and key to set open the windows of the statute. Statutes are to be construed with reference to the principles of the common law. For, it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced; for, if the Parliament had had that design, it is naturally said, they would have expressed it."

It is a sound rule that whenever one legislature uses a term without defining it, which is well known in the English law, and then has a definite appropriate meaning affixed to it, they must be supposed to use it in the sense in which it is used in the English law. *Hillhouse* v. *Chester*, 3 Day 166 (Conn).

The foregoing are substantially the rules upon which we must proceed in construing the statute in question. Beyond the force of the cited cases, we have seen no decisions of binding authority upon us in our own court; and we have found none precisely in point from other States. But as there are statutes in other States similar to our own, the decisions there may be of some assistance in passing upon what appears to be a new question.

In Michigan the prescribed modes are "gift, grant inheritance, devise or in *any other manner.*" In a suit for damages for injuries to the person of the wife, in the case of *Berger* v. *Jacobs*, 21 Mich. 215, 221, Judge Christiancy said: "We think within the fair intentions of this section, the right to recover damages for her personal injury and suffering from an assault and battery committed upon herself, should be placed upon the same ground as choses in action or pecuniary claims or rights accru-

ing to her during coverture; that such damages when recovered would, under this statute, constitute a part of her individual property. She could, therefore, we think release such damages before or after action brought, or appropriate or convey them when recovered in the same manner as when unmarried; and the husband has no right in, or control over the action." And the like was held in Illinois, in the case of *Chicago, &c. Railroad* v. *Dunn,* 52 Ill. 260. In this State she is authorized to sue alone for a tort committed upon her person. The general words of the statute are "descent, devise or otherwise." In the Massachusetts law, the words were "descent, devise, bequest, gift, or grant, that which she acquires by her trade, business, labor, or services," but contained no general words like the Michigan statute, nor specific words pointing to property acquired by being wronged; and under it, says Mr. Bishop, the Maine construction not being permissible, the omission was supplied by a separate statute that "any married woman may sue and be sued in actions of tort, as though she were sole, and all sums recovered by her shall be her sole and separate property." Mr. Bishop says "it is not enough that the thing claimed by the wife is property; it must moreover come to her in the way in which the statute points." Vol. 2, sec. 78, Bishop on the law of Married Women. In New Jersey, the words are "gift, grant, devise, or bequest," and the courts of that State have held that these words are not to be taken in a narrow or restricted sense. *Ross* v. *Adams,* 4 Ditcher, 160; *Rice* v. *Railroad,* 1 Black. 358; but the rights of the wife are held to be limited by the mode prescribed.

In this State, the statute in question must be regarded by all reflecting persons as wholesome and most salutary, having for its object the securing to married women their property coming to them in the prescribed mode, against the casualties

of life in our country, where the fortunes of all are subject to constant fluctuations, and the spirit of enterprise, and its kindred spirit, speculation, involve the homes and fortunes of every family in danger of sudden loss, if not in certain and inevitable ruin.

To secure to the wife and mother, in her own fortune, the means of rearing her children, is wise policy and a just and humane device of the law; and we are of opinion to give to the legislative enactment in this regard its fullest legitimate scope; to extend it to every mode of acquisition which the legislature has authorized; to give the fullest force to the law which its terms will permit; and if we stop short of extension of the terms of the law beyond their legal signification, it is because we are unwilling in any wise to invade the legislative province.

The laws must be made by the legislative power. Courts must stop where the legislature has seen fit to stop. We must determine this question as though it were a question raised here between the two claimants for this sort of property—the husband on the one hand, and the wife on the other. In such a controversy we would be compelled to hold that the common-law rights of the parties remained in tact, except so far as they are affected by the statute. The words of the statute plainly do not include the damages recovered in this case for a tort on the wife's person. The word purchase must be held to mean in the statute what is its legal signification in the English and American law. It applies to the acquisition of real property acquired in all other ways and modes, except by inheritance; it cannot be held to apply to this chose in action. It follows that the husband has a legal interest in the suit, and the wife's common law disability as a witness attaches, and she is not a competent witness in this case, and the circuit

court erred in ruling otherwise, and for this error the judgment complained of must be reversed and annulled, and the cause remanded for a new trial to be had therein in the said circuit court.

It is not necessary, therefore, to pass on any other question raised in the record.

JUDGMENT REVERSED.