ANNA E. WOOD v. NORTH CAROLINA PUBLIC-SERVICE
CORPORATION.

(Filed 5 December, 1917.)

1. **Evidence—Nonsuit—Trials—Motion.**

   Upon a motion to nonsuit, the evidence is considered in the light most favorable to the plaintiff, and an inference in defendant's favor may not be drawn from his own evidence.

2. **Negligence — Separate Parties — Concurrent Cause — Entire Damage — Actions.**

   Where the negligence of two parties proximately and concurrently cause a personal injury to a third person, free from blame, he may maintain an action against either of the others for the entire damage.

3. **Street Railways—Alighting Passengers — Negligence — Evidence — Contributory Negligence—Trials—Questions for Jury.**

   A street car company owes the duty to its passengers to use a high degree of care to see that they safely alight from its cars when they stop at the regular stopping points; and where there is evidence tending to show that automobiles usually passed the place where plaintiff was injured at the rate of one or two a minute, and by the exercise of care, a street car conductor could have seen the approach, at high speed of one of them, and failed to warn a passenger of her danger, for which she had looked and failed to see, and that she was struck and sustained the injury com-

plained of while she was alighting or immediately thereafter, it is sufficient upon the issue of defendant's actionable negligence, and the plaintiff will not be held, as a matter of law, to be barred of her right to recover upon the issue of contributory negligence.

CLARK, C. J., concurring; WALKER, J., dissenting; BROWN, J., concurring in the dissenting opinion of WALKER, J.

APPEAL by defendant from *Long, J.,* at the May Term, 1917, of GUILFORD.

This is an action to recover damages for personal injury caused, as the plaintiff alleges, by the negligence of the defendant street railway company.

On 5 July, 1916, the plaintiff became a passenger on one of the defendant's street cars for the purpose of going to her home west of the city of Greensboro, and when the car reached a point nearly opposite Fields' Store, about one-half mile west of the corporate limits of Greensboro, it stopped at a regular stopping place and at the destination of the plaintiff for the purpose of allowing passengers to alight.

The plaintiff while in the act of alighting from the car, or immediately after she had reached the ground, was stricken by an automobile running at from 25 to 30 miles an hour, and was seriously injured. The automobile was running in an opposite direction from the car. The evidence of the defendant tended to show that the plaintiff was injured 10 or 12 feet from the street car while she was attempting to pass to the sidewalk. There was also evidence on the part of the plaintiff that if she had been permitted to get out on the other side of the street car she could have stepped from the car in safety to a cinder path.

At the conclusion of the evidence there was a motion for a judgment of nonsuit, which was denied, and the defendant excepted.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*G. S. Bradshaw and John A. Barringer for plaintiff.*
*Jerome, Scales & Jerome for defendant.*

ALLEN, J. The only question presented by the appeal from the refusal to nonsuit the plaintiff is whether there is any evidence fit to be submitted to the jury of negligence on the part of the defendant; and in the consideration of this question we must accept the evidence of the plaintiff and construe it in the light most favorable to her. We are not permitted to base our judgment on the evidence of the defendant, nor can we draw the inference, favorable to the defendant, that the automobile was running on the extreme right side of the road and turned suddenly and struck the plaintiff, as no witness testified that the auto-

mobile changed its course, and one witness (Boyles) testified "The auto-
mobile was coming along by the side of the car." We cannot act upon
the statement in the defendant's brief that the evidence shows that the
automobile turned suddenly and struck the plaintiff, in the absence of
evidence of the fact, and it can only be inferred upon the presumption
that the driver of the automobile was obeying the law by being on the
right-hand side of the road, when all the evidence shows she was vio-
lating the law by exceeding the speed limit.

The evidence is irreconcilable, the plaintiff testifying that "as soon as
I struck the ground the automobile got me"; "I had just cleared the car
when it got me"; "I just barely cleared the car to get down to the street";
"I hadn't made any steps"; "I just stepped off the car and hadn't taken
a single step"; and the witnesses for the defendant that she was 10, 12
or 15 feet from the car when she was stricken.

Giving, therefore, to the evidence a construction favorable to the plain-
tiff, and accepting it as true, as it is our duty to do, it shows that the
defendant permitted the plaintiff, a passenger, to alight on a roadway,
along which one or two automobiles were passing each minute, imme-
diately in front of an automobile moving rapidly, without warning, and
when the conductor of the defendant, who knew of the dangers of the
road, did not look to see if any danger was approaching.

Is this evidence of negligence? The negligence of the driver of the
automobile is established by the evidence, but this does not relieve the
defendant from liability, if it was also negligent, as there may be two
proximate causes of an injury; and where this condition exists, and the
party injured is not negligent, those responsible for the causes must
answer in damages, each being liable for the whole damage, instead of
permitting the negligence of one to exonerate the other.

It is in the application of this principle it is held, except where the
doctrine of comparative negligence prevails, that the plaintiff cannot
recover if his own contributory negligence concurs with the negligence
of the defendant in causing the injury, because as his negligence is one
of the proximate causes, he as well as the defendant is liable for the
whole damage, and as there is no contribution among tort feasors he
cannot recover anything from the defendant.

"There may be more than one proximate cause of an injury, and it is
well established that when a claimant is himself free from blame, and
a defendant sued is responsible for one such cause of injury to plaintiff,
the action will be sustained though there may be other proximate causes
concurring and contributing to the injury. In 21 Am. & Eng. Enc.
(2 Ed.), 495, it is said: 'To show that other causes concurred in pro-
ducing or contributing to the result complained of is no defense to an
action of negligence. There is indeed no rule better settled in this

present connection than that the defendant's negligence, in order to render him liable, need not be the sole cause of plaintiff's injuries.' Again, on page 496, it is said: 'When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, he is liable.'" *Harton v. Tel. Co.,* 141 N. C., 461, approved in *Harvell v. Lumber Co.,* 154 N. C., 262, where it was pointed out that the difference of opinion in the *Harton case* was only as to the application of the principle to the facts in that record.

We must then inquire as to the negligence of the defendant, and here the decision depends on whether the defendant owed a duty to the plaintiff, who was a passenger on its car, and who was injured while alighting, or immediately thereafter, according to her evidence, and whether it failed in the performance of this duty.

There is a conflict of authority as to the obligation of the street railway after a passenger has left the car, the Courts of Alabama and Kentucky holding that it must provide a reasonably safe place and way (*Montgomery v. Street Ry.,* 133 Ala., 529; *R. R. v. Mitchell,* 138 Ky., 190), and others that, as the company has no stations and no control over the streets, its obligation should be coextensive with its control, and that the relation of carrier and passenger ceases when the passenger has safely alighted. Clark's Accident Law, 13; *Creamer v. R. R.,* 156 Mass., 321; *Street R. R. v. Body,* 105 Tenn., 669; *Schley v. R. R.,* 19 Anno. Cases, 1020 and note; *Stuart v. R. R.,* Anno. Cases, 1912 B 863, and note.

The weight of authority seems to be with the latter view, and also that in any event the railway must exercise the highest degree of care, and must afford the passenger an opportunity to alight in safety.

The Court says in *Anderson v. Street R. R. Co.,* 12 Ind., 197: "There is a marked difference between the duties the law imposes upon those who operate street railways and those who operate ordinary steam railways. The latter usually run upon scheduled time and have fixed places for receiving and discharging passengers. There is a higher degree of care imposed upon street railways than upon ordinary steam railways. When their cars stop for passengers to alight it is the duty of their servants to stop long enough for the passengers to alight, and to see that the car does not start again while any one is attempting to alight or exposed to danger."

In *Smith v. R. R.,* 32 Minn., 3, "The defendant was a carrier of passengers for hire, owning and controlling the tracks and cars operated thereon. It is therefore subject to the rule applicable to passenger carriers. . . . As respects hazards and dangers incident to the business or employment, the law enjoins upon such carrier the highest degree of care

consistent with its undertaking, and it is responsible for the slightest negligence. . . . This rule extends to the management of the cars and track and to all the subsiduary arrangements necessary for the safety of passengers."

In *R. R. v. Scott,* 86 Va., 907, "Passenger carriers bind themselves, says a learned author, to carry safely those whom they take into their coaches, as far as human care and foresight will go—that is, to the utmost care and diligence of very cautious persons. . . . And in *R. R. v. Prindle,* 82 Va., 122, this Court said, 'The implied contract to carry safely includes the duty of giving the passengers reasonable opportunity to alight in safety from the train, and a violation of this part of the company's duty is culpable negligence, for which an action will lie.' In Wharton on Negligence, sec. 649, it is laid down that 'When a danger approaches, it is the duty of the officers of the road to notify passengers, so that they can take steps to avoid it; and failure to give such notice is negligence. So, also, if there is a dangerous place at the landing, it is the duty of the conductor to warn those about stepping out,' and 'he must give notice to all if any danger in alighting is probable.' "

In *Cartwright v. R. R.,* 42 Mich., 606, *Cooley, C. J.,* says: "If a car in which there were passengers was not standing where it would be safe for them to alight without assistance, it was the duty of the company to provide assistance, or give warning, or move the car to a more suitable place. . . . These authorities show the extent to which the liability of carriers of passengers goes in cases like the present, and by this liability street or horse railways, as well as other classes of carriers, are bound."

In *Street R. R. v. Twiname,* 111 Ind., 591: "A railway company is a common carrier of passengers as well as freight. A street railway company is also a common carrier of passengers, with duties and responsibilities entirely analogous to, and substantially the same as, those of a railway company in the carriage of passengers. Both are railway companies within the usual meaning of that term, and the same general rules and degree of care in the transportation of passengers must be observed by each. . . . Carriers of passengers are required to exercise the utmost care and foresight in the performance of their duty as such carriers. . . . This is the equivalent of requiring that the highest degree of care and skill shall be used in the transportation of passengers as the rule is stated by many of the decided cases."

In *R. R. v. Higgs,* 38 Kan., 383: "All possible skill and care implies that every reasonable precaution in the management and operation of street cars be used to prevent injuries to passengers; it means good tracks, safe cars, experienced drivers, careful management, and judicious operation in every respect. All possible foresight means more than this; it

means anticipation, if not knowledge, that the operation of street cars will result in danger to passengers, and that there must be some action with reference to the future, a provident care to guard against such occurrences, a wise forethought and prudent provision that will avert the threatened evil if human thought or action can do so."

In *R. R. v. Tobriner,* 147 U. S., 571, after speaking of the duty of a street railway to deliver its passengers in safety, "It was not a duty to a person solely because he was in danger of being hurt, but a duty owed to a person whom the defendant had undertaken to deliver, and who was entitled to be delivered safely by being allowed to alight without danger."

And the author, in 4 R. C. L., "The general rule just considered that in the case o fa carrier having exclusive control or occupation of its tracks and stations, one traveling may still retain the status of a passenger after alighting from the carrier's vehicle, is from the nature of things not applicable to carriers not so situated, as for instance, in the case of persons traveling on street railway cars. While a person attempting to alight from a street car remains a passenger until he has accomplished the act of alighting in safety, and the carrier owes to the passenger alighting that very high degree of care and attention which the law puts upon it generally to the end of promoting the safety of its passengers, and will be liable for negligent injury to the passenger while so alighting, it is the generally accepted view that one who has alighted from a street car and is in safety upon the highway is no longer a passenger."

If, therefore, the defendant owed to the plaintiff a high degree of care, and if it was its duty to protect her from and warn her of danger and to see that she alighted in safety, has there been a breach of that duty?

The question presented to us by the motion for judgment of nonsuit is within even narrower limits, as the law commits to the jury the duty of saying how the fact is, and leaves to this Court no power or jurisdiction except to decide whether there is any evidence of a breach of duty fit to be considered by the jury, and enjoins upon us that we give to the evidence the construction most favorable to the plaintiff, and that she is entitled to the benefit of every reasonable inference arising upon the evidence.

The evidence is conflicting, and that of the plaintiff, standing alone, would raise serious doubts in our minds if we were sitting as jurors as to her right to recover, but we cannot give her the benefit of the legal principles we have declared, which apply as of right to all litigants, and say there is no evidence that the defendant failed to protect and warn her, and to give her the opportunity to alight from its car in safety.

One witness testified that 60, and another 120, automobiles passed the place of injury in an hour, and all the evidence shows that the plaintiff alighted on a much traveled roadway.

The plaintiff testified she was struck by the automobile as soon as her feet were on the ground. Her language is, "As soon as I struck the ground the automobile got me"; "I just had cleared the car when it got me"; "I just barely cleared the car to get down to the street."

A witness for the defendant, who was a passenger, testified: "The first I saw of the automobile was when the car stopped. I was looking out the window. It had not quite got to the street car." The conductor in charge of the car was on the platform with the plaintiff, according to her evidence, and he testified, "I did not look specially to see whether an automobile was coming when Mrs. Wood got off the car."

Is it not a reasonable inference from this evidence that the plaintiff was permitted to alight on a roadway along which automobiles were passing at the rate of one or two a minute, immediately in front of a rapidly moving automobile, and that if the conductor had looked, and had taken the slightest precaution, he could have seen the approaching automobile and the danger to the plaintiff, and could have averted the injury?

The plaintiff must have been in the act of getting off the car, if her evidence is true, at the time the passenger saw the automobile not quite to the street car, and if the conductor had looked would he not have seen the same thing, and that the automobile was not on the side of the roadway away from the car, but was rushing down on the plaintiff, and can it be said, if these facts are true, that the defendant afforded the plaintiff the opportunity to alight in safety? If so, there was evidence of a breach of duty on the part of the defendant which was the cause of the plaintiff's injury, and the case was properly submitted to the jury.

There is evidence of contributory negligence upon the part of the plaintiff, and we must assume that this was submitted as the charge is not sent up as a part of the record. It cannot be declared as matter of law that she was guilty of such negligence that her right of action would be barred, because she testified that she was paying attention when she got off, and that immediately before attempting to alight she looked for an automobile and did not see one.

If the inquiry is made as to why the conductor should be held to the duty of seeing the automobile when the plaintiff testifies that she looked and did not see one, the answer is that the automobile was running about 800 yards a minute, and that she might well have looked and not see it as she was preparing to alight, and the conductor could have seen it while she was alighting, as enough time must have elapsed for the automobile to have run two or three hundred yards from the time she prepared to get off the car until she actually reached the ground.

WOOD v. PUBLIC CORPORATION.

There is other evidence in the record which we have not referred to because we have not thought it necessary that the motorman in front of the car could have seen the approaching automobile one-half mile distance.

We have carefully considered the record and are of opinion that the judgment must be affirmed.

No error.

CLARK, C. J., concurs in all that is so well said in the opinion of the Court, and upon the additional ground that the defendant did not give the plaintiff opportunity to alight upon the sidewalk on the opposite side of the car, where she would have been perfectly safe. The evidence is that the track on the right-hand side of the street going west, in which direction the car was moving, ran close to the sidewalk, and that the plaintiff could have stepped off the step of the car upon this sidewalk. This would have been entirely safe. On the contrary, the conductor put her off on the left-hand side of the car, in the middle of the street, which she thus had to cross where two cars per minute, on an average, were running at a high rate of speed, and put her down immediately in front of a car which was approaching at the rate of 30 to 35 miles an hour, according to defendant's conductor.

The defendant contends that it was unsafe to put her off on the right-hand side of the street, where the track was close along the sidewalk, because the telegraph poles were on that side, as if telegraph poles 60 yards apart, and standing still, would be more of a menace to a passenger getting off from a standing car than putting her off on the left-hand side in the maelstrom of moving cars, shooting by two to the minute, or "at least 100 per hour," going at a rapid rate on an asphalt roadbed— the smoothest and best road in the State (from Greensboro to High Point)—and immediately in front of the car which struck the plaintiff and which, according to the defendant's evidence, was moving 35 miles per hour, which was nearly 800 yards a minute.

WALKER, J., dissenting: It will be necessary to a proper understanding of the case, as we view it, that we should make a brief rehearsal of the facts:

The action was brought by plaintiff to recover damages on account of personal injuries received by her, after she had alighted from one of the defendant's street cars, by being run over and dragged by an automobile driven by Mrs. H. F. Coleman, of Baltimore, Md. The plaintiff, on 5 July, 1916, became a passenger on one of the defendant's street cars for the purpose of going to her home west of the city of Greensboro, and when the said street car had reached a point upon its run nearly opposite

Fields' store, and being about one-half mile west of the corporate limits
of the city of Greensboro, it stopped for the purpose of allowing passen-
gers to alight therefrom, at a regular stopping place for defendant's
cars, it being the destination of plaintiff upon this occasion. The plain-
tiff alighted from the street car, when she was immediately stricken by
an automobile driven by Mrs. H. F. Coleman at a very high rate of
speed, receiving the injuries for which this action was brought. The
automobile, at the time it ran over the plaintiff, was going east and in
an opposite direction to that of defendant's car, and was running at the
rate of 25 to 35 miles an hour. Mrs. Coleman, who was driving the
automobile, not only was violating the law as to the excessive speed at
which she was running, but was driving the same upon the left-hand
side of the road in violation of the law. If the plaintiff did not see the
automobile when she looked straight ahead, the line of vision being free
from any obstruction for a long distance, it must necessarily have been
on the other side of the road, and it could not have appeared six feet
from the side of the car when first seen by plaintiff's witnesses without
having been suddenly veered from its course. The evidence shows that
the defendant's track beyond the corporate limits of the city of Greens-
boro is located on the right-hand side of the public highway going west,
and to the left of the street car track going west is a well-constructed
way, about 30 feet wide, paved with asphalt, for the use of pedestrians
and various kinds of vehicles, including automobiles. It had been the
custom and rule of defendant for twelve years to discharge its passen-
gers from its car going west at this point, on the left-hand side of said
car, and this custom or rule was known to plaintiff prior to the time of
her injury upon this occasion. The place where plaintiff alighted was
paved with asphalt and was smooth, while upon the right-hand side of
the track there was a ditch and poles, except at one point directly in
front of Fields' store, where there was a sidewalk running a short dis-
tance, paved with cinders, and in wet weather a passenger getting off
on that side would have to step in the mud. The accident happened
about 4 o'clock p. m., and at this point a person could see both east and
west along the highway a distance of one-half mile. Plaintiff was
familiar with the conditions there existing at the time of her injury,
having on numerous occasions prior to her injury gotten off defendant's
cars at that stopping place.

At the close of plaintiff's evidence, defendant moved to dismiss the
action and for judgment as in case of nonsuit, under the statute, and
this motion was renewed at the close of all the testimony. The motion
being refused, defendant appealed to this Court.

It is a familiar principle that a defendant in an action of this kind
can only be made liable in damages for a breach of duty to the plaintiff—

45—174

that is, of a duty which was owing to her at the time she was injured by the automobile. If there was no duty owing to the plaintiff, or no breach of a duty, it follows that there is no liability.

A street car company has no right of way save that upon which its tracks are laid, and for this reason the Courts have generally held that where a car stops in public streets or other highways, for the purpose of discharging a passenger, the relation of carrier and passenger is terminated as soon as the latter alights from the car, for he is then not upon the premises of the company, but upon the street over which the company has no control. It may be true, as argued, that the carrier is not allowed to discharge passengers at a place where the street is out of repair and in such a dangerous condition that to alight from the car upon the highway would be perilous; but however this may be, it is not the case when the street is in good condition at the place of alighting, for then the passenger, as soon as he leaves the car, occupies the position of a traveler on the highway, with the same relative rights and responsibilities. It has been so decided in several cases by Courts of the highest authority.

Speaking of a passenger who had just alighted from a car on a public highway, the Court, in *Creamer v. West End St. Ry. Co.*, 156 Mass., 320, said: "He was not a passenger when the accident occurred, and he ceased to be a passenger when he alighted upon the street from his car. The street is in no sense a passenger station, for the safety of which a street railway company is responsible. When a passenger steps from the car upon the street, he becomes a traveler upon the highway, and terminates his relationship and rights as a passenger, and the railway company is not responsible to him as a carrier for the condition of the street or for his safe passage from the car to the sidewalk. When a common carrier has the exclusive occupation of its tracks and stations, and can arrange and manage them as its sees fit, it may be properly held that persons intending to take passage upon or to leave a train have the relation and rights of passengers in leaving or approaching the cars at a station (*Warren v. Fitchburg R. R. Co.*, 8 Allen, 227; 85 Am. Dec., 700; *McKimble v. Boston, etc., R. R. Co.*, 139 Mass., 542; *Dodge v. Boston, etc., Steamship Co.*, 148 Mass., 207, 214; 12 Am. St. Rep., 541); but one who steps from a street railway car to the street is not upon the premises of the street railway company, but upon a public place where he has the same rights with every other occupier, and over which the company has no control. His rights are those of a traveler upon the highway, and not of a passenger."

In that case, the passenger was killed immediately after leaving the car by another car of the same line, running in an opposite direction upon a parallel track, so that this case is stronger for this defendant than was the case cited for the one there sued. Other cases to the same

effect are: *Bigelow v. W. E. Street Ry. Co.,* 161 Mass., 393; *Oddy v. W. Street Ry. Co.,* 178 Mass, 341; *Cit. Elec. Ry. Co. v. Boddin,* 105 Tenn., 666.

It appeared in *Oddy v. W. E. Street Ry. Co., supra,* that the plaintiff upon leaving the car was stricken by a hose cart immediately upon reaching the ground and before he had an opportunity to take a step after doing so. The Court said: "Street car companies carrying passengers in ordinary public streets or highways are not negligent in not providing means for warning passengers about to leave a car of the danger of colliding with or of being run over by other vehicles in the street. The risk of being hurt by such vehicles is the risk of the passenger, and not that of the carrier. It is not a danger against which the carrier is bound to protect the passenger or to give him warning." And in the Tennessee case, the Court said: "If the passenger relation did not terminate when the defendant safely alighted from the car, when would it end? Would it continue only while he was crossing the parallel track, or until he had reached a point of comparative safety on the far side of the street? Or if, after reaching the ground, he had directed his steps to the other side of the street, would it have continued until he reached the pavement? We think that the Massachusetts Supreme Court was wise in adopting the rule that this relation terminates the moment passengers descend to the street. This is the fixed point free from all speculation or uncertainty."

The same doctrine is stated in a note to *Duchemin v. Boston Elev. Ry. Co.,* 104 Am. St. Rep., at p. 589, where it is said: "The instant a passenger steps or frees himself from the car on which he has been riding, he, for most purposes, ceases to be a passenger. The street is in no sense a passenger station, for the safety of which a street railway company is responsible. When a passenger steps from a car upon the street, he becomes a traveler upon the highway, and terminates his relation and rights as passenger, and the railway company is not responsible to him as a carrier for the condition of the street or his safe passage from the car to the sidewalk. One who steps from a street railway car to the street is not upon premises of the railroad company, but upon a public street, where he has the same rights of any other occupier, and over which the company has no control."

In this case there is no evidence of any inherent defect in the street, or anything over which defendant had any control. If we do not adopt the principle of the cases which have been cited, it would be next to impossible for a street railway to operate its cars for the convenience and accommodation of the public. The decision in this case will result in a peculiar hardship to the defendant. The proximate cause of the accident was not attributable to the defendant, but to the recklessness of

another which could not well have been foreseen. If it was not the sole cause, it was at least an intervening one and still the proximate cause. There are physical circumstances which tended to show, and from them the inference is clearly deducible, as we have stated, that the automobile was not on the side of the road where the street car was just before it struck the plaintiff, and, therefore, that it must have been suddenly turned from. its course and driven in the direction of the street car. The view to the west along the road was clear and unobstructed, and if it had been on the side where the street car was the plaintiff was bound to see it when she looked, for plaintiff's witnesses showed that it would be in the line of vision, and she stated that it was not in sight. It was impracticable for the defendant to have prevented the collision with the plaintiff. It was not bound to anticipate that Mrs. Coleman would so suddenly, and in such a reckless manner, drive her automobile so near the street car and imperil the lives of passengers while they were alighting therefrom.

It is also to be said that the law of this State provides: "In approaching or passing a car of a street railway which has been stopped to allow passengers to alight or embark, the operator of every motor vehicle shall slow down, and if it be necessary for the safety of the public, he shall bring said vehicle to a full stop. Upon approaching a pedestrian who is upon the traveled part of any highway, and not upon a sidewalk, and upon approaching any intersecting highway or a curve, or a corner in a highway where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signaling." Gregory's Supplement, p. 446.

The defendant's servant in charge of the street car was not bound to anticipate a violation of the positive law by Mrs. Coleman, or any one else. The laws of the road are well known, and if they had been obeyed, there would have been no injury to the plaintiff. There was a clear and wide space between the proper position of the automobile, under the law, and the place where the plaintiff alighted from the street car. If the automobile had stopped, or even had the speed been reduced, there would have been no accident. It was not a natural and probable consequence that the automobile would be driven so near the street car as to injure a passenger then in the act of alighting, and the conductor was not, in law, required to look out for such an unexpected event. 29 Cyc., 528.

The law of the State regulating the speed and use of automobiles on highways was enacted for the very purpose of protecting persons when leaving street cars without the necessity of their conductors to look in every direction before discharging passengers. The plaintiff had already looked in the direction of the approaching automobile, when she had a

clear and unobstructed view, and did not see it. She had a better chance to see it, if within the range of vision, than the conductor, because she was occupying the steps in the act of getting off the car, while he was behind her on the platform. It would seem that if the law required the conductor to look, which we deny, he was not required to do so in this instance, because he would not have seen as well as she could, and certainly not any better than she did. If she was where the automobile could have been seen, and did not see it, how could he have seen it if he had looked in the same direction? There is no reason why the conductor should have helped the plaintiff off the car, for she was fully able to help herself. She said, "I just had cleared the car when the automobile got me."

If the rule we have laid down, and supported by well-considered precedents, is the correct one, we do not see how the street railway company can be liable when she admits that she had cleared the car, and therefore was in the highway when she was struck by the automobile. But there is testimony from two disinterested witnesses, introduced by the plaintiff (and not by the defendant), who were in the car at the time and looking out of the windows, that she was well in the street, one stating the distance from the car to be six feet, and the other that the street car was moving when the automobile first was seen, before it reached her, and that when she was struck by the automobile, she fell "very near the middle of the street" and was lying there when the automobile passed her. One of these witnesses, for the plaintiff, testified that "passengers always get off on the left-hand side at this place," and the other that "it was the usual custom to do so."

There was a width in the street of 25 feet. It will make the case appear more clearly for the defendant if we conclude by quoting the testimony of L. A. Jackson, a witness for the plaintiff: "The automobile was passing the window where I was sitting when I first saw it. It was running very fast. Mrs. Coleman was driving it, so I heard. I did not see the automobile strike Mrs. Wood. I think the automobile was five or six feet from the street car when it struck her. The street car track is off from the paved part of the road. When the automobile passed the street car it was going straight ahead. After the automobile passed the window where I was seated, it would have to go about 25 feet before it struck Mrs. Wood. I heard Mrs. Wood scream and looked out the window. She was about in the center of the paved part of the road and was about the center when the automobile finally left her— about 30 feet from the car. I think the street car had just started when the automobile went by the window."

This proves that she was not by the side of the street car when she was stricken by the automobile, but from 20 to 30 feet, at the very near-

est, at least 6 feet away from it. She was necessarily excited, and perhaps rendered unconscious and oblivious of the events by the sudden impact, whereas her witnesses were not under such disadvantages. If they give the true account of the matter, there was no negligence on the part of the defendant. But her own testimony places her on the ground when she was stricken, and that is sufficient to have severed the relation of carrier and passenger at the time of her injury.

The two persons who were on the car, and who testified most strongly against her, were her own witnesses (Mr. M. E. Boyles and Mr. L. A. Jackson), and they placed her near the middle of the street when the automobile left her. But in any view of the testimony, when construed most favorably for her, she was on the ground, and not on the premises of the company, when she was hurt; and one of her witnesses, Mr. L. A. Jackson, stated that the street car had started before she was stricken and as the automobile passed the window where she was sitting. In this case, if the conductor had looked ahead, he would have seen no more than the plaintiff herself saw, and besides, after a conductor looks and fails to see, an automobile driven at a high rate of speed could reach the steps where passengers are being discharged before he could reach the platform again and assure them of safety and then let them off. And that was the reason for passing the law and restraining the chauffeurs, as the Legislature knew of the difficulty and danger in the other method.