### G. W. DANIEL v. EAST TENNESSEE PACKING COMPANY AND J. G. GARNER.

(Filed 16 June, 1939.)

**1. Trial § 22b—**

On motion to nonsuit the evidence must be considered in the light most favorable to plaintiff. C. S., 567.

**2. Appeal and Error § 21—**

Where the charge of the court is not in the record it will be presumed correct.

**3. Automobiles § 24c—Evidence held sufficient for jury as to whether driver, at time of collision, was acting in scope of his employment.**

The evidence tended to show that defendant company's salesman informed plaintiff, a manager of a market purchasing the company's products, that he had to go to another city to see another representative of the company on company business, that plaintiff went on the trip as an invited guest, and that the accident in suit occurred en route to such other city. *Held:* The evidence was sufficient to be submitted to the jury on the question of whether at the time of the accident defendant's salesman was acting in the scope of his employment and in the furtherance of defendant's business.

**4. Automobiles § 18g—Evidence held sufficient for jury on question of driver's negligence in failing to avoid colliding with car skidding on the highway.**

The evidence tended to show that the accident in suit occurred on an asphalt road made slick by rain, that a car on the highway was skidding from one side of the road to the other, that the driver of the car immediately behind slowed up and stopped partially on the shoulder of the road and avoided a collision, but that the driver of defendant's car, going in the same direction behind the two cars, failed to slow up, either because the driver thought he could pass the skidding car or because of defective brakes and steering apparatus on defendant's car, and struck the skidding car, causing the injury to plaintiff, a guest in defendant's car. *Held:* The evidence was sufficient to be submitted to the jury on the question of negligence of the driver of defendant's car.

**5. Automobiles § 21—**

A guest in an automobile injured in a collision may recover of either of the drivers of the cars involved if the collision was the proximate result of their concurrent negligence.

**6. Negligence §§ 6, 7—**

A person is liable for an injury if his negligence is in any degree a proximate cause of the injury, since he may be exonerated from liability only if the total proximate cause of the injury is attributable to another or others.

**7. Automobiles §§ 15, 18f—**

Evidence that the driver of defendant's car stated that the car had defective brakes and steering apparatus and that he could have stopped the car and avoided the accident if the car had had good brakes, is competent, the probative force being for the jury.

BARNHILL, J., dissents.

APPEAL by defendants from *Olive, Special Judge,* at April Term, 1939, of FORSYTH. Affirmed.

This is a civil action for actionable negligence brought by plaintiff against the defendants to recover damages.. The defendants denied negligence. There was no plea of contributory negligence set up in the answer of the defendants, as plaintiff was a guest in the car driven by defendant J. G. Garner.

The case was tried before Oscar O. Efird, judge, and a jury, in the Forsyth County court. The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the defendant J. G. Garner, in operating the automobile described in the complaint, acting in the furtherance of and in the scope of his employment with the East Tennessee Packing Company, as alleged in the complaint? Answer: 'Yes.'

"2. Was the plaintiff injured by the negligence of the defendants, as alleged in the complaint?

"A. As to the defendant East Tennessee Packing Company? Answer: 'Yes.'

"B. As to the defendant J. G. Garner? Answer: 'Yes.'

"3. What amount of damages, if any, is the plaintiff entitled to recover? Answer: '$1,000.00.' "

Judgment was rendered on the verdict by the Forsyth County court. The defendants made numerous exceptions and assignments of error and appealed to the Superior Court; that court rendered judgment as follows: "This cause being heard in due course at the April Term, 1939, of the court, on the appeal of the defendants from a judgment of the Forsyth County court, in favor of the plaintiff, and the court having heard the arguments of counsel and being of the opinion that each of the assignments of error of the defendants should be overruled and that the judgment of the Forsyth County court should be affirmed; it is therefore ordered, adjudged and decreed that each of the assignments of error of the defendants is hereby overruled and that the judgment of the Forsyth County court is hereby affirmed; that the costs of the appeal are hereby taxed against the defendants. Herbert E. Olive, Judge Presiding."

From this judgment the defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Walter E. Johnston, Jr., and Fred M. Parrish for plaintiff.*
*Ratcliff, Hudson & Ferrell for defendants.*

CLARKSON, J. At the close of plaintiff's evidence and at the conclusion of all the evidence, the defendants made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court overruled these motions and in this we can see no error. The evidence for plaintiff must be taken in its most favorable light. The charge of the Forsyth County court is omitted from the record; it is therefore presumed to be correct.

The defendant J. G. Garner was an employee of the East Tennessee Packing Company at the time of the collision, Sunday, 29 May, 1938. He was driving a 1937 Ford which had on each door an emblem, or insignia, of the East Tennessee Packing Company. The emblems had the picture of the state of Tennessee through a circle, with the word "Selecto," their brand name, on the sign, and "East Tennessee Packing Company" below. That car was the car which Garner used about his business in Winston-Salem in calling on the trade, including the Purity Market. He had been with the company eight years and the firm did a wholesale business, selling meats. The plaintiff was manager of the Purity Market, in Winston-Salem, and bought products from the defendant company through Garner. When Garner came to get his usual order he told plaintiff that he had to go to Charlotte the next day to see the salesman of the East Tennessee Packing Company over there on some company business, and asked plaintiff if he would like to go. Garner had been selling plaintiff meat, as manager of the Purity Market, for some time, about twice a week.

We think the evidence was sufficient to be submitted to the jury that Garner, at the time of the collision, was an employee of the East Tennessee Packing Company, in the scope of his employment, and about his master's business. The jury so found and the presumption is that the trial judge charged correctly on this aspect. *Misenheimer v. Hayman,* 195 N. C., 613; *Puckett v. Dyer,* 203 N. C., 684; *Jackson v. Scheiber,* 209 N. C., 441 (446).

In *Robinson v. McAlhaney,* 214 N. C., 180 (182-3), speaking to the subject, it is said: "The master is liable for the negligence and for the malicious torts of his employee whenever such wrongs are committed by the employee in the course of his employment and within its scope. *Ange v. Woodmen,* 173 N. C., 33, 91 S. E., 586; *Jackson v. Telegraph*

*Co.,* 139 N. C., 347, 51 S. E., 1015; *Munick v. Durham,* 181 N. C., 188, 106 S. E., 665. The decisive question is: 'Was the agent's act in the course of his employment and whilst about the master's business? No ironclad test can be given, but in all cases the question whether the act was committed by the servant in the service of his employer or for his own purpose is one for the jury in view of all the circumstances. Wood, Master and Servant, 594; *Hussey v. R. R.,* 98 N. C., 34, 3 S. E., 923; *Daniel v. R. R.,* 117 N. C., 592, 23 S. E., 327. The master is not liable for the resulting damage when his servant steps aside from the master's business to commit a wrong not connected with his employment," citing authorities.

In *York v. York,* 212 N. C., 695 (699), we find: "In *Harper v. R. R.,* 211 N. C., 398 (402), citing many authorities, it is said: 'It is well settled in this jurisdiction that negligence on the part of a driver of a car will not ordinarily be imputed to another occupant unless such other occupant is the owner of the car and has some kind of control over the driver. They must be engaged in a joint enterprise or joint venture. Automobile driver's negligence is not, as a general rule, imputable to a passenger or guest." At p. 723, quoting from *Albritton v. Hill,* 190 N. C., 429 (430), it is said: "In reference to concurrent negligence we have held that where two proximate causes contribute to an injury the defendant is liable if his negligent act brought about one of such causes. *White v. Realty Co.,* 182 N. C., 536; *Wood v. Public Service Corp.,* 174 N. C., 697; *Harton v. Telephone Co.,* 141 N. C., 455."

Plaintiff and Garner, a defendant and the employee of the East Tennessee Packing Company, left Winston-Salem for Charlotte on the evening of 29 May, 1938, about 2:30 o'clock. It was raining. When about eight miles south of Lexington, going towards Salisbury, they had a collision with what is known as the "Byerly" Dodge car. Mrs. Andrew Byerly testified, in part: That she spoke to Garner after the collision; "I said, 'Was you in the wreck?' and he said, 'Yes, I was in the wreck.' I said, 'Well, who was the fault of it?' He said, 'It could have been me; I expect it was me,' and then he said he saw the car slipping. He said, 'I could have stopped.' Q. Is that all he said? Ans.: 'And I thought I could pass it,' that's what he said. He said, 'I thought I could pass by it.' When he talked about stopping, he said, 'I could have had stopped.' Q. Which car did he say he saw slipping? Ans.: 'My daughter's car' (Corinna Byerly). Q. What was it he said he didn't stop his car? Ans.: He said, 'I could have stopped,' and he said, 'I could have passed by'; I believe that's what he said, 'I thought I could pass by.' He said, 'I could have stopped but I thought I could pass by.'"

Corinna Byerly testified that she was driving toward Lexington: "My car was a 1929 Dodge Sedan. About the time of this wreck I was driving about twenty miles an hour. We were driving along very slowly and first my rear end slipped to my right and then, you see, I tried to right it around, and then my rear end went to my right, first went to my left and then slipped around to my right, and that's when I got across the road. At the time of the collision with the car driven by Mr. Garner, my car was almost right in the road. I had almost gotten it around right. Mr. Garner didn't slacken his speed any that I noticed. He didn't pull to the right off the road at all. After I got my car right in the road, or straight in the road, it was just about to the center of the line at the time of the collision. Mr. Garner's car stayed on the hard surface the entire time. The fender of my car was smashed up and the radiator was mashed in on one side and, of course, the hood was smashed up. The frame was knocked up. We never did have it repaired, it was smashed up so bad." She could see the Garner car coming very fast, it never decreased its speed. It was in evidence that Corinna Byerly was driving at the rate of fifty miles an hour the "Byerly" car, on the slick road "as it skidded right across." The road was wet and slick as it had been raining, and in that condition it was hard to drive—one had to be very cautious. It was a black asphalt road, usual width of 18 feet and 6 feet shoulders on each side. The road was practically straight. The "Byerly" car was seen by the driver of the "Riddle" car, which was in front of the "Garner" car, going towards Salisbury, about 400 to 450 feet. The driver of the "Riddle" car, at that distance, said it was skidding about like Corinna Byerly testified. The driver of the "Riddle" car was bringing his car to a stop and thus avoided the collision by driving to the right over to the side ditch and passing the "Byerly" car. The "Garner" car, which was behind him, crashed into the "Byerly" car. The plaintiff was knocked unconscious, his head hitting the windshield and his knee-cap being seriously injured. Plaintiff being a guest and passenger, we think there was evidence of concurrent negligence between the driver of the car plaintiff was riding in and the "Byerly" car.

As said in *White v. Realty Co.,* 182 N. C., 536 (538): "But if any degree, however small, of the causal negligence, or that without which the injury would not have occurred, be attributable to the defendant, then the plaintiff, in the absence of any contributory negligence on his part, would be entitled to recover; because the defendant cannot be excused from liability unless the total causal negligence, or proximate cause, be attributable to another or others. 'When two efficient proximate causes contribute to an injury, if defendant's negligent act brought

about one of such causes, he is liable.' *Wood v. Public Service Corp.,* *supra* (174 N. C., 697), and cases there cited." The present case is similar to that of *Cunningham v. Haynes,* 214 N. C., 456.

We do not think the negligence of the driver of the "Byerly" car was the sole and only proximate cause of plaintiff's injury. In the *Cunningham case, supra,* speaking to the subject, it is held: "A guest injured in a collision between two automobiles is entitled to recover against either one or both drivers when both are guilty of negligence proximately causing the injury, and the negligence of one will not exonerate the other if his negligence contributed to the result in any degree."

In *Groome v. Davis, ante,* 510, it is held: "Where collision is caused by negligence of the drivers of both cars, a guest in one of the cars may recover against either of the drivers without regard to liability as between the drivers."

Garner told plaintiff and his wife that "He had had a wreck with his car when it was new and turned it over and had to have it overhauled and repaired, and since that time his brakes nor his steering gear had never worked properly, and had he had good brakes he might have avoided this accident that he and I had." This evidence was competent, the probative force was for the jury.

There is no better rule of law than that of the prudent man. On the slick and slippery asphalt road, the driver of the "Riddle car" in front of the car driven by Garner, saw the "Byerly" car dancing as it was from one side of the road to the other. He slowed down, turned to the right and ran partly on the shoulders of the road and avoided the injury. Garner saw, or in the exercise of due care could have seen, the "Byerly" car, crippled as it were on the slick and slippery road, and should have slowed down, turned to the right and attempted to avoid the injury like the driver of the "Riddle" car did. Of course, if his car was in such a condition that he could not stop or slow down, on account of defective brakes, this was some evidence of negligence.

On the entire record, we think the matter was for a jury to pass on. We see no error in the court below overruling the exceptions and assignments of error on the appeal by the defendants from the Forsyth County court.

The judgment of the court below is
Affirmed.

BARNHILL, J., dissents.