CASE 28—ACTION BY ANNIE MITCHELL AGAINST THE LOUISVILLE RAILWAY COMPANY FOR DAMAGES FOR PERSONAL INJURIES.—May 5, 1910.

## Louisville Ry. Co. v. Mitchell.

Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

WALTER P. LINCOLN, Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Judges—Disqualification—Objections—Time.—An objection to a judge for bias must be made at the threshold; and is too late where it comes after other motions.

2. Carriers—Carriage of Passengers—Injuries—Actions—Questions for Jury.—In an action for injuries to a street car passenger by being struck by another car going in the opposite direction as she was passing around the end of the car from which she had alighted, evidence held to require submission of defendant's negligence and plaintiff's contributory negligence to the jury.

3. Carriers—Carriage of Passengers—Care Required.—A carrier's duty to exercise a high degree of care toward passengers continues until the passenger alights from the car, and has reasonable opportunity to reach a place of safety.

Louisville Ry. Co. v. Mitchell.

4.  Carriers—Carriage of Passengers—Injuries—Duty to Keep a
    Lookout.—Where a street car motorman is about to pass a
    car which has stopped at a street crossing to discharge pas-
    sengers, it is his duty to keep a sharp lookout for persons
    alighting from the car, and who might be expected to cross
    immediately behind it, and to have his car under such con-
    trol that he might stop it at a moment's warning.
5.  Carriers—Carriage of Passengers—Injuries — Contributory
    Negligence—Injury Avoidable Notwithstanding.—Where  a
    passenger, after alighting from a street car, passed round
    the end of the car, and was struck by a car traveling in the
    opposite direction, which she could not see until just be-
    fore she was struck, she was not barred from recovering by
    contributory negligence, if the motorman could by ordinary
    care have perceived her danger and avoided the injury to
    her.
6.  Appeal and Error—Review—Harmless Error—Remarks  of
    Counsel.—In an action for injuries to a street car passenger
    by the alleged negligence of a motorman, defendant was not
    prejudiced by the remarks of plaintiff's attorney that the
    motorman was a strike breaker; it having been promptly ex-
    cluded by the court.

FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B. LEE
for appellant.

EDWARDS, OGDEN & PEAK for appe'lee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirm-
ing.

Mrs. Annie B. Mitchell was a passenger on one of
the south-bound cars on Second street.  There are
two tracks on Second street.  The north-bound cars
run on the east track, and the south-bound cars on
the west track.  Persons on the south-bound cars
have to get off on the west side, and, if they live
east of Second street, they have to go across both
tracks to get to the sidewalk.  Mrs. Mitchell got off
at Ormsby and walked across behind her car, which
was still standing there.  Just as she was leaving
the second track, she was struck by a north-bound

car, which came up while she was behind the car she had gotten off. She sustained serious injuries from the collision, to recover for which she brought this suit, and in the circuit court there was a judgment in her favor for $2,000. The defendant appeals.

The first point made on the appeal is that the judge before whom the case was tried erred in refusing to vacate the bench under the affidavit filed by the defendant. The facts about the matter are these: When the case was called, the defendant filed an affidavit for a continuance on the ground of the absence of three witnesses. Before the motion for the continuance was disposed of by the court, one of the witnesses appeared, and thereupon the plaintiff consented that the affidavit might be read as the deposition of the other two witnesses. The defendant then announced ready, and a panel of 18 was drawn from which to select the jury. The plaintiff and the defendant each struck three from the list. At this time the defendant moved the court for a continuance of the case on the ground that it was surprised in that the witness who had appeared would not state what it was alleged in the affidavit she would state. It was stated in the affidavit that she saw the plaintiff just before she was hurt, and the witness would state that the plaintiff was not the person she saw. When this question was made, the court passed the case until the next day. On the next morning when the court met, the defendant filed an affidavit that the judge would not give it a fair trial. The matters relied on in the affidavit all existed, and were known the day before. A motion of this sort must be made at the threshold, and not after other motions are made and disposed of. K. C. R. R. Co. v. Kenney, 82 Ky. 154; German Ins. Co.

v. Landram, 88 Ky. 433, 11 S. W. 367 592, 10 Ky. Law Rep. 1039; Vance v. Field, 89 Ky. 178, 12 S. W. 190, 11 Ky. Law Rep. 388; Hargis v. Com., 123 S. W. 239.

The next objection made is that the court should have instructed the jury peremptorily to find for the defendant. The plaintiff's statement as to how the injury occurred is as follows: "I got off the car, and went around the rear end of the car to go to my home, and, when I got around the end of the car, I listened and there was no signal. I heard none, and I am confident there was none, so I thought I was safe, and I started across, and the car got me on the track. I was very near off, and it caught my clothing. I hardly know how it was done, but it was bound to have caught my clothing, for I seemed to be whirled in the air, and came down on this shoulder and arm and side of the head. Q. Where were you when you saw the approach of the car? A. I was on the track. Q. Which way was the car going? A. North. Q. Then after you saw the car, and saw it approaching, what did you do? A. I tried to get out of the way of it, of course. Q. Did you run? A. I didn't run. I just walked faster, and made an effort to get off. Q. How was the car coming with reference to speed, was it coming fast or slow? A. My impression was that it was fast. Of course, I would have gotten across if it had not been. Q. Had you at any time heard the signal of this car, any gong or any bell at all? A. Not until just before I was struck. Q. About where were you when you thought you were being tossed into the air? A. Well, I was just about the edge of the track. There was one of my feet had a mark on the shoe, on

the heel. Q. Could you tell me just how far you were thrown. A. Well, I don't know that I can. I don't know whether I can tell how far I was thrown, because I was so dazed at the time. Q. On what part of your body did you fall? A. On my arm and shoulder. Q. Left side? A. Yes, sir.'' On cross-examination this evidence was given: ''Q. As you came back of the car from which you got off, and before you attempted to cross the other track, knowing the track was there, as you say you did, did you give a glance of the eye to see whether the other car was coming? A. Naturally I would. I am not so positive. I did not hear the signal, so I thought I was safe. Q. I am not asking you what you thought or what you might have done; but I am asking you, did you do it? Did you as you passed from behind one car, whether that car was standing still or moving, and before you entered the other track—did you turn your head or even give a glance to see whether or not a car was coming on the track you were about to cross? A. That may appear curious, but I didn't see it until I got on the track.  *  *  *  Q. Where were you in the street or with reference to the north-bound track when you say you heard the scream? A. Where was I on the track? Q. Yes. A. I was very near across. Q. Over on to the north side—I mean over to the east side? A. Yes, sir.''

On practically this state of facts a recovery was sustained in Louisville Railway Co. v. Hudgins, 124 Ky. 79, 98 S. W. 275, 30 Ky. Law Rep. 316, 7 L. R. A. (N. S.) 152, and under the rule laid down in that case, the court did not err in refusing to give the jury a peremptory instruction to find for the defendant. The railway company proved by its witnesses that the north-bound car was going very slow

as it passed the south-bound car, that the gong was ringing, and that the car was under control. According to its evidence, the accident was due to the fact that Mrs. Mitchell came around the standing car and upon the other track so close to the north-bound car that the injury to her could not have been avoided by ordinary care on the part of those in charge of that car. But this question was aptly submitted to the jury by the instructions of the court, and we cannot say that the verdict of the jury is not warranted by the evidence. While the numerical weight of the evidence is with the railway company, there are facts in the case warranting the conclusion which the jury reached. The conductor of the south-bound car says that, when the motorman on the north-bound car passed him about the middle of his car, he was kicking the gong, indicating an alarm that somebody was on the track in front. Mrs Mitchell was behind her car, and if she came in view a half a car's length from the motorman, and he had his car under control, he should have been able to have stopped it or to have so checked it at least so as not to strike Mrs. Mitchell with great force. The evidence is that she was thrown in the air, and thrown to the ground with such force as to fracture her shoulder. The proof shows that the car struck Mrs. Mitchell with considerable force. She was about the center of the track when the alarm was sounded, and was walking hastily to get across. If this car had been under control, it could not have run as far as it did catching Mrs. Mitchell before she could make two or three steps and striking her with the force it did after the motorman began to kick his gong as an alarm signal.

Carriers of passengers are under obligation to exercise toward their passengers a very high degree of care, and this duty continues until the passenger alights from the car and has a reasonable opportunity to reach a place of safety. In the case referred to the court said: "The duty that persons operating street cars owe to passengers does not end immediately when the passenger has stepped safely to the ground. They are required to, and should, exercise ordinary care to prevent injury by their cars to persons who have left the car while they are attempting to reach the street or a place of safety. It was, of course, the duty of appellee, when she started to cross the tracks, to exercise ordinary care for her own safety, but, although she failed to do this and her failure may have contributed to such an extent to bring about the injury of which she complains, that it would not have happened except for her failure to exercise this degree of care, this will not relieve the appellant of liability if the person in charge of the car that struck her could by the exercise of ordinary care have discovered the peril appellee was in, and, by the exercise of ordinary care, have prevented the injury to her. It was the duty of the motorman in charge of the car at this point and place to keep a sharp lookout for persons alighting from the car, and who might be expected to cross the street immediately behind it, and to have his car under such control that he might stop it at a moment's warning, and it is manifest that, if the motorman had exercised this degree of care, he could and should have discovered the appellee's peril in time to have prevented injuring her."

Practically a similar view was taken by the United States Supreme Court in Chunn v. City R. R. Co.,

207 U. S. 302, 28 Sup. Ct. 63, 52 L. Ed. 219. The court there said: "Nor was the plaintiff necessarily wanting in due care in taking her place between the tracks. It was the usual place from which entrance to the Washington car was made. It was safe enough under ordinary circumstances. It was made unsafe only by reason of the defendant's negligent act in running another car rapidly by. The plaintiff had the right to assume that the defendant would not commit such an act of negligence, and that, when it stopped one car and thereby invited her to enter it, it would not run another by the place of her entrance and put her in peril. We think that it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence. That issue with the others in the case should have been submitted to the jury with appropriate instructions. Nor is it clear that, even if the plaintiff was not free from fault, her negligence was the proximate cause of the injury. If she carelessly placed herself in a position exposed to danger, and it was discovered by the defendant in time to have avoided the injury by the use of reasonable care on its part, and the defendant failed to use such care, that failure might be found to be the sole cause of the resulting injury." Those in charge of the cars on such a street must know when they pass a car standing at a crossing that the car is there for the purpose of taking on and letting off passengers, and that the passengers getting off that car must cross the street behind it if they desire to reach the other side of the street. That passengers do this is a matter of daily observation. These passengers cannot see a car approaching on the other side until they are practically on that track. It necessarily follows that a due regard for life requires cars as

they approach other cars standing for this purpose to be under control and to be so operated as not to endanger the passengers whom the defendant has just set down from its other car and who have had no opportunity to reach a place of safety. They cannot well remain standing in the street; for they would be in danger from other vehicles. Their presence crossing the other track is reasonably to be anticipated whenever a car is seen stopped, and therefore the car approaching such a car on the other track should be run with such care as the safety of these persons demand, and we adhere to the rule laid down in the case cited that proper care is not exercised, unless such approaching car is so under control as it passes the other car that it may be stopped on a moment's notice.

The rule as to contributory negligence in this class of cases has been often laid down by us. It is essential that reasonable signals of the approach of the car should be given, and it is equally essential that the car should be under such control that, if persons are seen on the crossing, danger to them may be avoided by proper care on the part of the motorman. Contributory negligence never bars a recovery where the danger of the person is discovered in time for those in charge of the car by ordinary care to avoid injury to him. But what the motorman in fact sees is not the criterion by which the liability of the company in such cases is to be determined. If he fails to see what he would have seen if he had kept a lookout, the company is as liable as if he in fact saw the person. To hold otherwise would be to allow his disregard of his duty to keep a lookout to place him and the company in a more favorable position than if he had done his duty in this respect.

The lookout is essential to the safety of the travelers on the highway, and public policy requires that a premium should not be placed on his disregard of his duty to keep a lookout. The rule is therefore a sound one which regards him as in fact seeing what he must have seen if he had been on the lookout. It applies in all cases where a lookout duty exists. L. & N. R. R. Co. v. Collins, 2 Duv. 114, 87 Am. Dec. 486; L. & N. R. R. Co. v. McCoy, 81 Ky. 411; L. & N. R. R. Co. v. Earl, 94 Ky. 368, 22 S. W. 607, 15 Ky. Law Rep. 184; L. & N. R. R. Co. v. Krey, 29 S. W. 869, 16 Ky. Law Rep. 797; L. & N. R. R. Co. v. Hackman, 30 S. W. 407, 17 Ky. Law Rep. 81; Passamaneck v. Louisville R. R. Co., 98 Ky. 195, 32 S. W. 620, 17 Ky. Law Rep. 763; Owensboro v. Hill, 56 S. W. 21, 21 Ky. Law Rep. 1638; Flynn v. Louisville R. Co., 110 Ky. 668, 62 S. W. 490, 23 Ky. Law Rep. 57; Floyd v. Paducah R. Co., 73 S. W. 1122, 24 Ky. Law Rep. 2364; Hummer v. L. & N. R. R. Co., 128 Ky. 486, 108 S. W. 885, 32 Ky. Law Rep. 1315. Where the law imposes on a person the duty to see, it will not hear him say he did not see what he should have seen. To allow this would be to allow him to shield himself by his own wrong. The principle is applied to public officers, in cases of mistake or fraud, and in other matters no less than in negligence cases. The defendant was properly held liable if by ordinary care the motorman could have averted the injury to plaintiff after he knew or should have known the peril in which her negligence had placed her.

The plaintiff's injuries are serious and permanent. The amount found in her favor is not excessive; and we do not see that the defendant could have been prejudiced by the remark made by the attorney to

the effect that the motorman was a strike breaker, when it was promptly excluded by the court.

Judgment affirmed.