DELIA E. HAYES

*vs.*

THE UNITED RAILWAYS AND ELECTRIC COM-
PANY OF BALTIMORE.

*Electric Railways*: *liability to passengers; moving train; stop
to discharge passengers at street corners;
near and far side stops.*

Where a railway company discharges a passenger at a place
of safety, on a public highway, from which there is a per-
fectly safe way to his destination, it is not liable if the passen-
ger, in going another way, is injured by falling into a ditch,
not on the right of way, nor in the way of the safe crossing.

p. 696

Where the passenger requests the conductor of an electric
car to let her off at a certain avenue, and the car was accord-
ingly stopped at said avenue, with the front platform opposite
to or on that avenue, it is not evidence of·any negligence on
the part of the railway that the stop was so made, instead of
having been made with its rear platform opposite to, or on
the said avenue, unless it be proved that the usage and custom
were to make such a stop, or unless the passenger requested that
the stop be so made.                              pp. 694-695

*Decided January 13th, 1915.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edward M. Hammond,* for the appellant.

*Joseph C. France* and *A. R. Stuart,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The declaration in this case alleges that the defendant, the United Railways and Electric Company of Baltimore, is a common carrier of passengers, and, on the 8th of September, 1912, owned and operated an electric railroad over one of its lines known as the Belair Road Line; that on said day the plaintiff entered, as a passenger, one of the cars of the defendant operated by it over its said line, paid her fare and requested the conductor of the car to carry her to and allow her to get off at a point known as Poplar avenue, in Baltimore County, to which place the car was then going, and where the defendant had established a stopping point or station for receiving or discharging passengers, "Poplar avenue being a public road abutting on and beginning at the westernmost line of the defendant's tracks or right of way" at said point; that the conductor stopped the car "with the rear steps of the car south of Poplar avenue"; that the plaintiff knew that the usual stopping point or station was a safe place for passengers to leave the cars of the defendant, and "that it was the usual custom of passengers so leaving said cars to walk across the railroad tracks of the defendant to the aforesaid public road, Poplar avenue, and that there were

HAYES vs. UN. RWYS. & EL. CO. OF BALTO. 689

Md.]                    Opinion of the Court.

no pitfalls, trenches or culverts in the path or way of persons so walking; that the plaintiff" relied "upon the car stopping at the usual stopping point or station at which the defendant's cars regularly stopped and at which defendant's agents discharged passengers from said cars;" that when she left the car it "was at night and so dark" that she "was unable to see and did not see and did not know that the point or place at which the defendant's car had stopped was not the aforesaid usual stopping point or station, but did, on the contrary, believe that the same was the aforesaid usual stopping point"; that relying upon defendant, believing, not being able to see and not knowing as aforesaid, the plaintiff then and there got off the car, and, "misled by the car stopping and the conductor allowing her to alight at a point not on Poplar avenue, and believing that she was going to the road known as Poplar avenue, walked westwardly, according to the usual manner of passengers discharged from said cars at said place, across the defendant's tracks"; that the place at which the car stopped to discharge the plaintiff was not the stopping point at which the defendant's cars "usually stopped to discharge the passengers, but was a place some distance therefrom, and a place where there was a dangerous culvert, embankment or trench on or immediately west of the tracks or right of way of the defendant, and the plaintiff without any notice or knowledge that the place at which the car had so stopped was not the usual stopping point or station at which said cars stopped and from which passengers from said cars usually walked westwardly to the aforesaid road, and while exercising ordinary care and caution on her part, did walk westwardly, intending to go" to the said road, and "fell over and down said culvert, embankment or trench" and "broke her leg."

The defendant filed two pleas, the second being the general issue plea, and the first alleges that Poplar avenue is a public highway of Baltimore County, and connects with and runs "westwardly" from at right angles with the Belair road, also a public highway of Baltimore County; "that it crosses the

defendant's tracks, which are located on the west side of Belair road, and affords a suitable, convenient, safe and proper passage for pedestrians and vehicles to and from the Belair road, to the properties bordering on Poplar avenue, and that said Poplar avenue is the proper and only crossing for persons wishing to go from Belair road into Poplar avenue; that the defendant's cars bound north on the Belair road stop on the near or south side of said crossing and the rear exit at a distance back and before reaching the said crossing, of nearly the length of said cars; all of which is a matter of public knowledge and was known or should have been known to the plaintiff; that the car from which the plaintiff alighted stopped at the usual stopping place as aforesaid, on or near the south side of said avenue, and with both exits at the usual position with relation to said Poplar avenue as aforesaid, the rear exit being at approximately the length of the car to the south of the front exit, and at the opposite end of said car," and that the plaintiff "alighted safely at a safe and proper place on a public highway." In reply to this plea the plaintiff averred that the matters stated therein were not matters of public knowledge, or such as were known or should have ben known by her; that the car did not stop at the usual stopping place on or near the south side of Poplar avenue, etc., and that the plaintiff "did not alight safely and at a safe and proper place on a public highway."

At the conclusion of the plaintiff's testimony the Court below granted four prayers withdrawing the case from the jury, and the plaintiff has appealed from the judgment in favor of the defendant.

These prayers assert, first, that there was no evidence legally sufficient to entitle the plaintiff to recover; second, that there was no evidence legally sufficient to show that the accident was the direct and proximate result of any act of negligence on the part of the defendant; third, that under the pleadings there was no evidence legally sufficient to entitle the plaintiff to recover, and, fourth, that the uncon-

tradicted evidence shows that the plaintiff was guilty of contributory negligence directly contributing to the accident.

In addition to the exception to the ruling on the prayers, there are four exceptions to the admission of evidence, but the latter are not pressed by counsel in their brief, and it is only necessary to say in regard to them that the plaintiff was not prejudiced by the answers of the witness to the questions objected to.

The evidence shows that the scene of the accident is located in Baltimore County, near and south of the southwest corner of Belair road and a public road called Poplar avenue. Poplar avenue, which is used by persons living on the avenue and at a place called Overlea, in going to and from the Belair road, commences at the west side of Belair road and runs west. The defendant operates a double-track electric railway on the west side of Belair road, and the drive-way of the road is east of the defendant's tracks. At the crossing from the driveway of the Belair road, over the tracks of the defend- ant, to Poplar avenue there is what the plaintiff speaks of as a bridge, or some boards laid to make the surface smooth. South of the southwest corner of Belair road and Poplar avenue, and located between the road and the adjoining prop- erties, there is what is spoken of in the evidence as a ditch or hole, about eight or ten feet deep. This hole, it would seem from the evidence, was originally the bed of a little stream from a spring located "further up the avenue," and now receives the drainage from the avenue, which is conducted into it through what the witnesses call "sewer pipes." The evidence is not clear as to the distance of the hole from Poplar avenue, but indicates that it is from five to thirty-five feet. It is four feet from the track of the defendant, and the intervening space is covered with broken stone.

For a month previous to the day of the accident, which occurred on the 8th of September, 1912, the plaintiff, who lived in Baltimore City, had been visiting a friend, Mrs. Burchell, in Overlea  She had also spent six weeks with

Mrs. Burchell in the summer of 1911. During these visits she went to Baltimore and back, over the defendant's railway, two or three times a week, taking the cars at the junction of Belair road and Poplar avenue and getting off at that point on her return, and on two occasions prior to the accident she got off there at night. She states that when she was returning from Baltimore the car always stopped opposite Poplar avenue, and that she always got off the car from the rear exit and went directly across the tracks to Poplar avenue. On the day of the accident, which occurred on Sunday, she went to Baltimore in the morning to attend church, and after spending the day with her sister, she took the Belair road car to return to Overlea about seven o'clock in the evening, and told the conductor to let her off at Poplar avenue. She reached Overlea about eight o'clock, and it was very dark, but not cloudy. When the car stopped she got off the rear end of the car, and after standing on the Belair road for a minute, to look up and down the road to see if an automobile was coming, thinking she was on Poplar avenue, "she walked directly across the track and walked right into this hole." The plaintiff states further that she did not know of the hole; that it was very dark; that she did not see the hole, and that there were no lights there.

A witness who was about fifteen feet from the plaintiff when she got off the car, says that when the car stopped the fender of the car was across Poplar avenue, and the rear of the car was about the length of the car, about thirty-five feet, south of Poplar avenue; that he saw the plaintiff get off the car, and when the car started off she turned around, and he saw her "go across the track and disappear;" that she "walked crossways to the crossing" and "crossed the track about five feet below the crossing;" that there was a cluster of lights about twenty feet above Poplar avenue, and about thirty or thirty-five feet from where the plaintiff crossed the track; that these lights gave about as much light as a red-hot poker in a bottle would give, and that "it was a

right dark night, but it was not cloudy." Another witness. who was sitting on a porch about a hundred and forty feet from the point of the accident, says that he saw the car stop. and that the front part of the car was "about the bed of Poplar avenue;" that he saw the plaintiff get off the car, and that after the car started she walked "directly west;" that the cluster of lights were about twenty feet north of Poplar avenue and about fifty feet from the hole, and that the lights were dim. John C. Hofmeister, who lives and conducts a store at the southwest corner of Belair road and Poplar avenue, testified that the hole "from one extreme to the other is about fifty feet;" that his property runs about thirteen feet along Belair road; that the hole is between the railway tracks and his and the adjoining property, and practically adjoins his property, and that the Belair road is about fifty feet from the corner of his property.

In addition to this evidence, and the testimony of the physicians as to the injury sustained by the plaintiff, the plaintiff offered in evidence a deed, dated the 13th of July, 1906, from the Baltimore and Jerusalem Turnpike Company to the defendant, granting the defendant the right to construct, etc., its railway upon said turnpike road, and a deed and agreement, dated the 24th of March, 1911, and executed by the said Turnpike Company and others, whereby it granted to the State of Maryland all its rights in the bed of said turnpike, subject to the existing rights therein of the defendant and to certain covenants in said deed and agreement.

The contentions of the appellant are stated in the brief of her counsel as follows: 1, "Where a railway company operating its cars in a suburban district sets down a passenger at a place different from the place the passenger requests to be allowed to alight on a dark night, and the passenger being deceived as to the place she has alighted, but believing that she is at a point where she requested to be allowed to alight, which place is a safe crossing on the railway company's

tracks, and still believing she is at her proper crossing, she proceeds to cross the tracks and is injured by falling into a hole immediately along side of the railway company's tracks. the company is liable to her for her injuries;" 2, "If the Court does not agree with the appellant's first proposition, then the appellant contends that the case should have been submitted to the jury to determine whether the appellant was operating its railway over its own .right of way, and set the appellant down thereon, and if they found that this was so, whether the appellant was injured on the appellee's right of way while endeavoring to reach Poplar avenue."

In respect to the first of these contentions, if we were to assent to the proposition *as stated,* the difficulty of applying it to the facts of this case would still remain. It rests upon the assumption that the conductor did not stop the car and afford the plaintiff an opportunity to get off at the point she requested him to stop. The evidence shows that she asked the conductor "to let her off at Poplar avenue," and that the car was accordingly stopped at Poplar avenue, so that the front part of the car was opposite or on Poplar avenue. She did not tell the conductor that she wanted the rear of the car placed opposite Poplar avenue, or that she intended to leave the car by the rear exit, and if she had alighted from the front of the car she would have landed in the Belair road at the point she now says she desired to get off. If a passenger entered a car on the street of a city with a request to the conductor to let her off at an intersecting street, and the conductor stopped the car so that the front of the car was at the intersection of the streets, it would hardly be claimed that he had failed to comply with her request unless there existed an established custom to stop the car on the opposite side, especially if there was a front exit from the car, and we see no reason why the same construction should not be given to a request to be let off at the junction of public roads in the country. The plaintiff states that on previous occasions when she got off the cars of the defendant at Poplar avenue

she landed in the Belair road opposite the avenue, but that evidence does not establish such a custom as would bind the defendant. In the case of *Chesapeake Bank* v. *Swain,* 29 Md. 483, the Court, speaking of a proffer to show "a general, uniform and notorious usage," said: "The plaintiffs were bound to prove, under the proffer, and according to the rules of law upon the subject, the existence of the general usage and practice prevailing with the banks, as a fact, and not as a matter of judgment or opinion of the witnesses, deduced from the manner of dealing in a few instances, in particular banks," and in the case of *Duling* v. *P., W. & B. R. R. Co.,* 66 Md. 120, it is said: "A custom or usage in law is something which exists in general repute. It is so prevalent that every one is supposed to know its existence, and is presumed to act and contract with reference to it. The plaintiff testifies it was the custom of the ticket agent to raise the window ten or fifteen minutes before a train would arrive, and sell tickets for that train only, and places only at which the train would stop. * * * His testimony therefore only shows what he thought was the usage, from what he had done, and had happened not to see done. He had no other knowledge, and, therefore, his testimony cannot tend in the silghtest degree to establish a controlling custom." In the case at bar there is therefore no evidence to establish a custom by which the direction of the plaintiff to the conductor should be construed as a request to stop the rear of the car at a point directly opposite Poplar avenue.

While there is no specific charge to that effect rt is suggested in the *narr.* that the conductor was negligent in allowing the plaintiff to get off at the point she did. But she landed in the Belair road, as she was obliged to do under any circumstances, and at a point not shown to be dangerous, and the conductor had no reason to suppose that, instead of going to Poplar avenue over the crossing, she would walk directly across the rails and roadbed of the defendant, where no crossing was provided, into a ditch or hole, not shown to be within the defendant's right of way. There are cases in this State

holding that where a railroad or railway company operates its cars over its right of way and adopts platforms or safe places for its passengers to land, it will be responsible for any injury resulting directly from its putting a passenger off at another and unsafe place. *B. & O. R. R.* v. *Leapley,* 65 Md. 571; *Topp* v. *United Railways,* 99 Md. 630. But this rule cannot apply where the railway company is required to discharge the passenger on a public highway and does so at a safe place, from which there is a perfectly safe way to the point of her destination.

The cases of *Macon Railway Company* v. *Vining,* 120 Ga. 511; *Ga. Ry. & El. Co.* v. *McAllister,* 126 Ga. 447; *Spangler* v. *Saginaw Valley Traction Company,* 116 N. W. 373; *Ft. Wayne Traction Co.* v. *Morvilius,* 31 Ind. App. 464; *Bass* v. *Street Railway,* 70 N. H. 170, and *MacDonald* v. *St. Louis Transit Co.,* 108 Mo. App. 374, cited and relied upon by the appellant, upon careful reading do not support her contention in this case. In all of them, except *McAllister's case,* the very points at which the plaintiffs got off the cars were dangerous and unsafe places for passengers to alight, by reason of excavations, depressions or deep gullies into which they were obliged or were likely to step in leaving the cars, and in *McAllister's case* the plaintiff was notified to leave the car, on a dark night, at another street than and some distance from the street at which she requested the conductor to let her off, and was exposed to a storm in her efforts to reach her home.

In regard to the second contention it is only necessary to say that it was the duty of the Court to construe the deeds offered in evidence, and the evidence shows that the plaintiff was "set down" on the Belair road. Moreover, the evidence does not show that the ditch or hole referred to was on the defendant's right of way or on the Belair road. The witness Hofmeister did say that it was between his property and the railway tracks, but the evidence also shows that it was four feet from the tracks, and Hofmeister further stated

HAYES vs. UN. RWYS. & EL. CO. OF BALTO. 697

Md.]                    Opinion of the Court.

that the hole adjoined his property, and that the Belair road was fifty feet from the corner of his property. But apart from this evidence, and assuming that the ditch adjoined the defendant's right of way, the *nar.* does not allege that the defendant was negligent in not erecting guard rails or adopting other means of protecting passengers from falling into the hole, or in allowing the hole to exist, and the theory of the plaintiff's contention is, and must be, that the hole, at the point indicated, rendered the place at which the plaintiff got off the car an unsafe place to discharge a passenger on a dark night, without warning her against the danger of falling into the hole. As we have said, the plaintiff alighted from the car at a safe place in the bed of the Belair road, from which there was a safe way to and over the crossing to Poplar avenue, and there was no reason why the conductor should have anticipated that the plaintiff would abandon the way provided for another over the company's rails and roadbed. If we were to hold that the defendant was negligent in allowing the plaintiff to get off where she did without warning her of the existence of the hole, we would, in effect, impose upon railroad and railway companies the burden of either erecting guards along their rights of way wherever there is a ditch or declivity, or of warning passengers of the existence of the ditch or declivity, regardless of its distance from a safe crossing or place at which the company's cars stop to take on or discharge passengers.

It follows from what has been said that under the pleadings in this case there is no evidence legally sufficient to entitle the plaintiff to recover, and that defendant's third prayer was properly granted.

*Judgment affirmed, with costs.*