WALKER and ALLEN, JJ., dissenting.
Civil action to recover damages for an alleged negligent injury and killing of plaintiff's intestate, a boy between eight and nine years of age.
There was evidence for the plaintiff tending to show that on 10 July, 1919, L. A. Loggins, a carpenter, and his infant son took passage on a *Page 223 
street car of the Southern Public Utilities Company, near 23d Street in the city of Winston-Salem, and paid their fares to East Winston, where plaintiff lived. In order to make this continuous trip over the defendant's lines it was necessary to ride down Liberty Street in said city to a point near its intersection with Fourth Street, and there to transfer to another car bound for East Winston.
Before reaching this regular transfer point the conductor gave the plaintiff and his son transfer tickets which were to be used on the East Winston car as soon as it reached the junction. They left the initial car at the usual stopping place, which is in "the center of the business part of town, where passengers ordinarily transfer from one car to another, and there is a great deal of traffic and congestion about this corner."
The father had his arms and pockets full of carpenter's tools and was carrying some tools on his shoulder. Just as he reached the sidewalk, the boy being several feet from the curbing out in the street, he remarked: "Son, where is our basket?" The basket, containing their lunch, had been left on the car. Almost instantly the boy turned and ran back into the street car to get the basket. He entered at the front door, and the motorman closed the door behind him. After finding the basket, he came back to the front platform. The motorman then opened the door to let the boy out, and just as he stepped off the car to the street an automobile driven by Louisa Holland ran over him and killed him. The boy "turned as he stepped off in the street and his back was to the automobile. He turned and she hit him. People were getting off and on the street car at the back end at the time she passed. The automobile ran over him just as he got off the car and got one step."
At the close of plaintiff's evidence, defendant moved for judgment of nonsuit as to the Southern Public Utilities Company, which motion was allowed. Plaintiff appealed.
Considering the evidence most strongly in favor of the plaintiff, which we are required to do on a motion to nonsuit, we think it sufficient to carry the case to the jury.
The following may be stated as reasonable inferences from the testimony appearing in the record:
1. Plaintiff's intestate, a boy under nine years of age, was a passenger on one of the street cars of the Southern Public Utilities Company. *Page 224 
2. In company with his father, he left this car at the usual place, for the purpose of transferring to another car which would carry them to East Winston.
3. He had in his possession a ticket which entitled him to transfer from one car to another at this point.
4. After leaving the car, but before reaching the sidewalk, and while passengers were still getting on and off, he returned through the front entrance to get his lunch basket, which inadvertently had been left on the car.
5. The defendant's motorman was aware of the boy's movements and opened the door for him to disembark the second time.
6. This happened near a corner in the center of the business part of town where there is a great deal of traffic and congestion.
7. Just as he stepped from the car to the street, and probably had taken one step, he was struck by an automobile and killed.
His Honor granted the defendant company's motion for judgment as of nonsuit upon the theory that plaintiff's intestate was not a passenger at the time of his injury, and that the defendant company owned him no affirmative duty or care.
By the clear weight of authority the relation of passenger and carrier ordinarily ends when the passenger safely steps from a street car to the street. He then becomes a pedestrian on the public highway, and the carrier is not responsible for his safe passage from the street to the sidewalk; for once safely landed in the street, his rights as a passenger cease. Woodv. Public-Service Corporation, 174 N.C. 697; Whilt v. Public-ServiceCorporation, 76 N.J. L., 729; Clark v. Traction Co., 138 N.C. 77; Palmerv. R. R., 131 N.C. 250; Smith v. City Ry. Co., 29 Or. 539; Creamer v.West End St. Ry., 156 Mass. 320; Keaton v. Traction Co., 191 Pa. St., 102;Street R. R. v. Body, 105 Tenn. 669; Oddy v. W. Street Ry. Co.,178 Mass. 341; Duchemin v. Boston, etc., Co., 104 Am. St. Rep., 580, and note.
However, the courts are not universally in accord on this subject. InJohnson v. Washington Water Power Co., 62 Wn. 619, it is stated: "A passenger on alighting from a street car is more or less subject to the conditions in which the carrier has placed him, and common prudence dictates that he should have a reasonable time to note the surroundings and prepare to protect himself from the ordinary dangers of the street." And inLouisville Ry. Co. v. Kennedy, 162 Ky. 560, it is said: "When a street car stops to permit a passenger to alight he is still a passenger until he has had a reasonable opportunity to reach a *Page 225 
place of safety." Again: "It is the duty of a street car company to select a reasonably safe place for landing passengers wherever it may stop a car for that purpose." Macon Ry. Co. v. Vining, 120 Ga. 511; and to like effect: Birmingham Ry., Light and Power Co. v. O'Brien, 185 Ala. 617;Welsh v. Spokane, etc., R. R. Co. 91 Wn. 260; Montgomery Street Ry. Co.v. Mason, 133 Ala. 529, and Melton v. Birmingham Ry., L. and P. Co.,153 Ala. 95. See, also, 10 C. J., 627.
Ordinarily a person would not step from a car to the street in the presence of imminent danger, or unless it were safe to do so; and safelylanded in the street does not mean simply reaching the street with both feet and no more. The test could not be as to whether the passenger had actually left the car and reached the street without injury, but was it safe for him to do so under the attending circumstances? Obviously, there is a difference between a safe landing and a landing in safety. The one has reference to the act of the passenger in stepping from the car to the street, the other to the condition in which he finds himself immediately after accomplishing this act.
We think a fair statement of the rule would be to say that a passenger, on alighting from a street car at the end of his journey, loses his status as a passenger when he has stepped from the car to a place of safety on the street or on the highway. The question should not be made to depend entirely upon the number of steps which the passenger may take on leaving the car, but rather upon the circumstances and conditions under which he alights. He is entitled to be discharged in a proper manner and at a time and place reasonably safe for that purpose.
It is also held that the relation of passenger and carrier continues while the passenger is transferring from one street car to another, he having been furnished a ticket enabling him to do so, when such transfer is part of a continuous trip, or, at least, that he is entitled to the same degree of care as a passenger to insure his safety from injury by the operation of the same or other cars of the carrier, or from defects or negligence in the use of any of its appliances. Wilson v. Detroit UnitedRy., 167 Mich. 107; Citizens Street Ry. Co. v. Merl, 134 Ind. 609; Keatorv. Traction Co., 191 Pa. St., 102; Baldwin v. R. R. Co., 68 Conn. 567;Walger v. Ry. Co., 71 N.J. L., 356.
In Clark v. Traction Co., 138 N.C. 77, it is said: "A person in transferring from one street car to the other is still a passenger, the transfer being but a part of the trip, for the whole of which the company agrees to convey in safety."
In Walger v. Jersey City Ry. Co., supra, the plaintiff was a passenger on one of the defendant company's cars. He disembarked from this car for the purpose of transferring to another, a ticket enabling him to do so having been furnished him on the car upon which he first took *Page 226 
passage. The place at which he alighted was the regular transfer point. After getting off the car, and as he was about to cross over to the other car, or while he was doing so, the car which he had left started to go around what is described in the case as "the loop," and its rear end struck him, knocked him down and injured him. Plaintiff testified that the accident happened immediately after he got off the car and before he had taken a single step away from it. The Court held that he was still a passenger at the time he was struck, and entitled to be regarded as such.
In Baltimore and Ohio R. R. Co. v. State, use Houser, et al.,60 Md. 449, the deceased was a passenger "with a ticket that entitled him to be carried safely from Hagerstown to Frederick. By the regular route and mode of carriage, it was necessary for him to change cars at the Weverton station and to cross over the intervening tracks of the defendant from one train to another. In making this transit he continued to be a passenger of the defendant, and entitled to the protection that the highest degree of care on the part of the defendant could afford under the circumstances."
It may be that this rule has been stated too broadly in some of the cases, but it would be well-nigh impossible to couch a satisfactory limitation in general terms, for as to whether a person, under a given state of facts, would be considered in law a passenger while transferring from one street car to another, although holding a transfer ticket, must be determined ultimately by the facts and circumstances attending the transfer in each particular case.
There is another line of cases in which a passenger does not lose his rights as such, under conditions somewhat different from those above stated.
In Tompkins v. Boston Elevated Ry. Co., 201 Mass. 114, it was held that a passenger who, on account of the crowded condition, was riding on the vestibule or platform of the car, did not cease to be a passenger by temporarily alighting for the purpose of permitting other passengers to get off the car more conveniently. The Court saying: "The necessity or courtesy which prompted his action did not terminate his status as a passenger."
In Chicago and Eastern R. R. Co. v. Flexman, 103 Ill. 546, it was held that where a passenger on a railroad, on arriving at his destination, missed his watch and, with the consent of the conductor, remained on the train for the purpose of looking for it until he reached another station, the company occupied the same position towards the passenger as if he had paid his fare to such other station.
In Ormond v. Hayes, 60 Tex. 180, it was held that where a passenger, upon alighting from a train, went to the baggage car for the purpose *Page 227 
of obtaining his baggage, and there aided the servants of the carrier in removing the baggage from the car, the relation of passenger and carrier did not cease by that act, he not holding a check for his baggage at the time.
In the case at bar, under all the facts and circumstances appearing on the record, we are of the opinion that plaintiff's intestate, while alighting from the car after getting his lunch basket, was entitled to be regarded as a passenger on defendant's car and still within the sphere of its protection as such. Palmer v. R. R., supra. We think he was within his rights as a passenger in immediately returning for his basket. This was done with the knowledge and consent, or at least acquiescence, of defendant's motorman. He was permitted to take the basket into the car without objection; and, under the same conditions, he returned to get it. Had he not been a passenger his basket would not have been on the car at all; neither would he. What really transpired was only an incident occasioned by his mode of traveling. It was not unusual or uncommon, and doubtless not altogether unexpected. The agility with which he ran back into the car, after his attention had been called to the missing article, was characteristic of boyish impulses; and his youthfulness should be taken into consideration in determining the relative rights and duties of the parties.
The defendant elicited on cross-examination some evidence not as favorable to the plaintiff as that stated above, but we are not permitted to pass upon conflicting testimony when considering a judgment of nonsuit. Our inquiry is directed to its sufficiency to warrant a verdict in favor of the plaintiff. The jury alone may consider its credibility. Shell v.Roseman, 155 N.C. 90.
With the case going back for a new trial, we refrain from further comment or discussion, as the defendant's evidence may show a different state of facts from what now appears.
Reversed.
WALKER and ALLEN, JJ., dissenting.