## TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY v. EVANS.

[No. 12,865. Filed April 5, 1928.]

*Beasley, Douthitt, Crawford & Beasley, Homer B. Aikman* and *W. Bert Conley,* for appellant.

*George W. Wells, Sunkel & Carithers* and *Duvall & Whitaker,* for appellee.

REMY, C. J.—On October 25, 1921, minor son of appellee was a passenger on one of appellant's traction cars which at the time was being operated by electric power northward upon tracks laid in Nineteenth street in the city of Terre Haute. The car was of the type known as a "one-man" car, and was in sole charge of the motorman, whose station was near the door which formed the exit of the car. It being the desire of Evans to alight from the car at the intersection of Nineteenth street with a street of the city named and known as Beech street, he so informed the motorman. Upon arrival of the car at the Beech street intersection, the motorman stopped the car and opened the door, which was on the east side, in order that Evans might alight. Whereupon Evans passed through the door, down the steps, and

alighted upon the street pavement. At the time the door was opened, and as Evans was alighting from the car, an automobile operated by Charles H. Pierce was approaching the traction car along and upon the east side of Nineteenth street from the north at a high and dangerous rate of speed. The motorman saw the automobile approaching but failed to warn Evans thereof. Evans alighted from the car and was going to pass to the east curb, but before he could do so, he was struck by the automobile and killed. Thereafter this action was commenced by appellee against appellant and Pierce to recover damages for the loss of the services of the deceased son of appellee. The complaint is in a single paragraph; the charge against the traction company being the alleged negligence of the motorman in failing to warn Evans of the approaching automobile, and in permitting him to leave the car and alight therefrom at the time. The negligence alleged against Pierce is that he was, at the time, operating the automobile on the wrong side of the street at a high rate of speed, and without giving any signal of his approach to the traction car. The specific averments of the complaint charging the traction company with negligence are that the motorman "carelessly and negligently opened the door and invited said Byron Evans to alight from its car at a time when said automobile was approaching from the north on the east side of Nineteenth street at said dangerous and high rate of speed as aforesaid; that Byron Evans had no notice or knowledge of the approach of said automobile, and his attention was attracted to getting off the car, and that said defendant's motorman, so in charge of the car, then and there carelessly and negligently failed and refused to give said Evans any notice or warning of the approach of said automobile before he alighted from said street car in front of and in the path of said automobile."

The traction company filed its separate motion to re-

quire plaintiff to make his complaint more specific by alleging facts upon which he based the conclusion that the motorman failed to give Byron Evans any warning of the approach of the automobile. The motion having been overruled, the traction company filed separate demurrer to the complaint. In the memorandum filed with the demurrer, it is asserted that the complaint is insufficient to state a cause of action against the traction company for the reason that no facts are pleaded to show that there was any duty resting upon the company to give plaintiff's son any warning of the approach of the automobile, and no facts to show that the automobile was not in plain view of such passenger at the time he was alighting from the car; and that no facts are pleaded showing that the alleged negligence of the motorman in failing to give the warning was the proximate cause of the accident. Demurrer was overruled, and a reply in denial closed the issues. Trial resulted in a verdict and judgment for appellee, plaintiff below, and against both defendants. Only the traction company appeals.

The only error assigned which will require consideration is the action of the court in overruling demurrer to complaint.

It appears from the complaint that the street car was stopped by the motorman at the request of appellee's decedent, at a place where it was customary to discharge passengers. There is no averment in the complaint, and there was no contention at the trial, that there was any defect in the street pavement at that point. It is specially averred that appellee's decedent was an able-bodied young man, nineteen years of age, and in full possession of his faculties.

At the time appellee's son lost his life, as averred in the complaint, there was in full force a statute making it unlawful for the operator of a motor vehicle to pass a

street car at a lateral distance of less than twenty feet, on the streets of any town or city of this state, when such car had been stopped to permit passengers to alight. Acts 1917 p. 337. Facts are not averred as to the width of the street, and no facts are set forth which show that the motorman in charge of the street car had knowledge at the time that Pierce, in the operation of the automobile, would violate the statute. If the width of the street was sufficient, the motorman had the right to assume, in the absence of knowledge to the contrary, that, in compliance with the law, Pierce with his automobile would pass to the east of the street car a distance of twenty feet; if the width of the street was such as to make it impossible for the automobile so to pass, the motorman had a right to assume, in the absence of knowledge to the contrary, that Pierce would stop his automobile while passengers were alighting from the car. *Louisville, etc., Traction Co.* v. *Lottich* (1914), 59 Ind. App. 426, 432, 106 N. E. 903; *Cole Motor Car Co.* v. *Ludorff* (1916), 61 Ind. App. 119, 111 N. E. 447; *Elgin Dairy Co.* v. *Sheperd* (1915), 183 Ind. 466, 108 N. E. 234.

Street railway companies operate their cars on tracks laid in streets, and use the streets in common with other vehicles; they have no control over such highways or the traffic thereon. It follows, therefore, that the duties owing by street railways to passengers alighting from their cars are not the same as are the duties of those commercial railroads which operate their cars and discharge passengers on their own rights of way over which they have complete control. *Creamer* v. *West End Railway* (1892), 156 Mass. 320, 31 N. E. 391, 16 L. R. A. 490, 32 Am. St. 456; *Hayes* v. *United Railway, etc., Co.* (1915), 124 Md. 687, 93 Atl. 226.

In the light of the legal principles stated, can it be said that, under the facts averred in the complaint, it was the

duty of appellant's motorman to warn appellee's son of the approach of the automobile? If so, the judgment must be affirmed, otherwise, reversed.

The general rule, supported by the great weight of authority, is that a street railway company owes no duty to warn or protect passengers, while leaving the car, from obvious dangers arising from automobiles which are being operated in the street. There is, perhaps, no better way to discuss the reasons for the rule than to review some of the authorities which support it. Our excuse for quoting at length from some of these authorities, is that they are from other jurisdictions, and are not, therefore, of easy access to many members of the profession in this state.

*Oddy* v. *West End Street Railway* (1900), 178 Mass. 341, 59 N. E. 1027, 86 Am. St. 481, was an action against a street railway company to recover damages for injuries received by a passenger struck by a rapidly moving hose wagon, while he was in the act of leaving the street car on which he had taken passage. The Supreme Court of Massachusetts, in the course of its opinion, stated the law to be: "Street car companies carrying passengers in ordinary public streets or highways are not negligent in not providing means for warning passengers about to leave a car of the danger of colliding with or of being run over by other vehicles in the street. The risk of being hurt by such vehicles is the risk of the passenger and not that of the carrier. It is not a danger against which the carrier is bound to protect the passenger or give him warning." A case, in many respects similar to the case at bar, is *Ruddy* v. *Ingebret* (1925), 164 Minn. 40, 204 N. W. 630, 44 A. L. R. 159. A passenger while in the act of alighting from a street car was struck and injured by a motor truck which was being operated in the street. There, as here, the action was against both the street car company and the operator of the truck. In dis-

cussing the law applicable to the facts of the case, the court, among other things, said: "The statute requires the driver of a truck to stop not less than '10 feet behind the street car.' . . . The legislature did not make the statute for rear gates only. It applies equally to front exit doors. It was intended to avoid the peril incident to vehicles being near the exits. The vehicle must be stopped 'behind the street car,' not behind the exit, hence the vehicle must avoid being alongside the street car when it stops to allow passengers to alight. The violation of this statute is a misdemeanor. . . . The street car is equipped with a mirror by which the motorman can see the rear gates in order that he may know that he may safely close the same. It is the claim of plaintiffs that defendant is charged with the duty of protecting the alighting passenger from danger from vehicles, and by use of the mirror the motorman could look for automobiles along the side of the car, and operate the street car so that a passenger stepping onto the street will not be subjected to this danger. But this is an obvious danger incident to all streets. It is a peril known to all passengers. The danger may come without warning, and, as in this case, it usually results from a violation of the statutory prohibition. . . . It would, under the circumstances, be impractical to require the company to take the responsibility of protection against those obvious dangers of the street. The motorman has no way of knowing when a driver will instantaneously become a wrongdoer. . . . The company is not the creator of these conditions or the street dangers and they are beyond its control. To say that its duty requires it to protect the passenger from them is, in effect, to make it an absolute insurer of safety to the passenger." In discussing the same question, the Supreme Court of Nebraska, in *Jacobson* v. *Omaha, etc., St. R. Co.* (1922), 109 Nebr. 356, 191 N. W.

327, 31 A. L. R. 563, used the following language: "Were it (the street car company) to take every possible precaution conceivable for the safety of . . . passengers, and were they allowed to depend entirely upon the precaution taken by the company, the company would be so engrossed with the care of its passengers and the protection of itself against liability that its practical performance as a transportation company would be seriously impaired. A street railway company is compelled to deliver its passengers upon the public streets. It cannot control nor secure absolute safety as to its landing places. The street is not under its control and its right to operate vehicles on the street is not paramount to the rights of other persons to do the same thing. It has no control over the condition of the roadway, nor can it control the traffic." The Ohio Supreme Court in *Cleveland, etc., R. Co.* v. *Arrison* (1926), 159 N. E. (Ohio St.) 580, a case almost identical with the instant case, holds that a street car company is not required to warn a passenger, who is about to alight from a street car, of possible danger of collision with passing automobiles. In deciding the case, the court, among other things says: "We are familiar with the rules laid down by this court and others that the railroad company owes a duty to stop its car in a safe place for passengers to alight, and that, if it fails to do so, and the passenger is injured while getting off or on a car, the railroad company is responsible, but we do not conceive it yet to be the duty of operators of street railroads to notify passengers that somebody on the street is likely to violate the rules of the road and the law in coming down on the wrong side of the street and of keeping too close to the street car." To the same effect, see *Reining* v. *Northern Ohio Trac., etc., Co.* (1923), 107 Ohio St. 528, 140 N. E. 84; *Carrigan* v. *Minneapolis, etc., R. Co.* (1915), 171 Iowa 723, 151 N. W. 1091; *Chesley* v. *Waterloo, etc., R. Co.* (1920), 188 Iowa

1004, 176 N. W. 961, 12 A. L. R. 1366; *Powers* v. *Connecticut Co.* (1909), 82 Conn. 665, 74 Atl. 931, 26 L. R. A. (N. S.) 405; *Scanlon* v. *Philadelphia Rapid Transit Co.* (1904), 208 Pa. St. 195, 57 Atl. 521; *Ellis* v. *Hamilton St. R. Co.* (1920), 48 Ont. Law Rep. 318, 11 B. R. C. 250, 57 D. L. R. 33. In support of his contention, appellee cites *Wood* v. *North Carolina, etc., Corp.* (1917) 174 N. C. 697, 94 S. E. 459, 1 A. L. R. 942, and *Loggins* v. *Utilities Co.* (1921), 181 N. C. 221, 106 S. E. 822. These decisions, both by the same court, are not in harmony with the weight of authority; besides, each is by a divided court; in the former there is a strong dissenting opinion. Appellee also cites and relies on *Fort Wayne, etc., Traction Co.* v. *Kumb* (1917), 64 Ind. App. 529, 116 N. E. 309. In that case the passenger was a deaf mute, was unacquainted with the method of receiving and discharging street car passengers, and because of her physical infirmity she looked to the motorman in charge of the car "for guidance and assistance in leaving the car." Thereupon, the motorman "beckoned to" the passenger and directed her to get off at the front door of the car, which was in violation of a rule promulgated by the company which required all passengers to leave at the rear door. The passenger, in compliance with the motorman's direction, got out of the car at the front entrance, and, on alighting upon the street, was struck and injured by a passing automobile. It is averred in the complaint that if the passenger had alighted from the car at the rear door, she would have done so in safety. Because of passenger's physical infirmity, coupled with the unusual circumstances, that case is distinguishable from the case at bar.

In harmony with the foregoing authorities, and in accordance with the general rule, we hold that, under the facts as averred in the complaint, no duty rested upon appellant to warn appellee's

son of the approach of the automobile which at the time was being operated by Pierce, and that the trial court erred in overruling the demurrer to the complaint. Reversed.