## Trout's Administrator v. Ohio Valley Electric Railway Company et al.

(Decided November 17, 1931.)

WAUGH & HOWERTON, D. E. WILKINSON and J. E. WILKINSON for appellant.

MARTIN & SMITH for appellee Ohio Valley Electric Ry. Co.

WILSON & ROBINSON for appellee Prichard.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

On October 11, 1928, A. R. Trout alighted from a car of the Ohio Valley Electric Railway Company (here-

inafter called the railway company) at Montague stop on Oakland avenue in Catlettsburg, and in attempting to cross the street came in collision with an automobile owned and driven by Dr. L. M. Prichard. He sustained injuries which resulted in his death, and his administrator instituted this action in the Boyd circuit court against the railway company and Dr. Prichard, alleging that decedent's death was caused by their joint and concurrent negligence. By appropriate pleading the issues were completed. At the close of plaintiff's evidence, each of the defendants moved the court for a peremptory instruction. The motion of the railway company was sustained and the jury, at the court's direction, found for it. The motion of Dr. Prichard was overruled and the case submitted to the jury as to him, resulted in a verdict in his favor. Plaintiff has prosecuted this appeal from the judgment as to each defendant. The only grounds submitted and argued for a reversal of the lower court's judgment relates to alleged error in instruction, but a consideration of the grounds necessitates a summary of the facts and circumstances shown by the record.

The paved and traveled portion of Oakland avenue at and near the point where the accident happened is about 23 feet in width. No part of the tracks of the railway company are upon the paved street but are adjacent thereto, and the main track parallels the street for some distance on the north side to the east and west. To the north of the main track is a switch or spur track. A meeting place is thus provided for cars going in opposite directions, east-bound cars going over the main track, and west-bound cars over the spur track. Montague stop is about midway of the spur track. It had been a custom for passengers to enter the rear of west-bound cars on the south side thereof and to leave the car from the front on the same side. Thus immediately before entering and after alighting from west-bound cars at this point, passengers were in the north edge of the street. To the south side of the street is a built-up residential section, but on the north side and between the tracks of the railway company and the river is open and unimproved land.

Mr. Trout had been employed to do some work on a building being constructed at Cliffside, between the cities of Ashland and Catlettsburg, and on the day of the accident had gone to that place to begin work. He was ac-

companied by Mr. Colbert Hinkle, whom he had employed to assist him. Finding that the foundation work being done by others had not progressed sufficiently for them to begin their work, they decided to return to their homes in West Virginia and, with that purpose in view, boarded an east-bound car of the railway company at Cliffside. Just before reaching Montague stop, it was discovered that Mr. Trout had left a suitcase containing clothing and articles belonging to one or both of them. It was decided that Mr. Trout would return for the suitcase while Mr. Hinkle would proceed to Kenova and there wait for him. When the car stopped to take on a lady passenger, Mr. Trout left by the rear door and had proceeded about halfway across the street where he came in collision with Dr. Prichard's automobile.

Witnesses, both for appellant and appellees, are in practical agreement as to the facts and circumstances leading up and connected with this unfortunate accident. Mrs. E. C. Norton, Colbert Hinkle, and Robert Owens were the only witnesses introduced by appellant who were in position to or professed to know anything about the circumstances attending the accident. Mrs. Norton testified, in substance, that as she was attempting to board the car some man seeming to be in a great hurry, jumped off, and pushed her aside with such force that she would have fallen had she not had hold of the rod. She did not see what occurred thereafter, except that after entering the car, she looked out and saw a man lying in the street. A number of other witnesses testified that decedent left the car in a very hurried and precipitate manner. All of the witnesses who saw the accident stated that decedent came in contact with the automobile about the center of the right side or just in front of the rear fender, and that at the time he was about the middle of the street.

Mr. Hinkle stated that he did not see the automobile until the collision occurred and could not testify as to the rate of speed it was traveling, but stated that Mr. Trout was knocked about 25 feet by the impact. Practically all other witnesses who testified on this point stated that deceased was lying near the point where he came in contact with the automobile.

Mr. Owens, who was introduced by appellant, testified that Mr. Trout fell back and that his feet were about the same point after the fall that they were when he

came in contact with the automobile. Mr. Owens further testified that he lives on the south side of the street directly opposite Montague stop and was on his front porch looking directly toward the street car. He stated that deceased hurriedly came off the car, started across the street, and had taken about three steps when he heard an automobile sound, and he then saw Dr. Prichard's automobile 10 or 12 feet away from deceased. He stated that it was not traveling over 15 or 20 miles an hour and "not making anything like speed" and was being driven about the middle of the street. Other witnesses stated that the automobile was traveling in the middle of the street, and six or eight of them fixed the rate of speed of the automobile immediately before the accident at 10 or 15 miles per hour. All witnesses agreed that the automobile swerved to the left and stopped in a very short distance on the south side. The weight of the evidence indicates that the automobile did not go more than 10 or 12 feet after the collision. A number of witnesses stated that the automobile horn was sounded just before the accident, and none of them stated that it did not sound, although some testified that they did not notice about the signal.

Dr. Prichard testified that he saw a lady whom the evidence indicates was Mrs. Norton leave the sidewalk on the south side of the street and cross over to board the car as he was approaching; that he drove very cautiously in approaching the car and watched for passengers who might alight from the front; that as he saw no one alight from the front door, he drove ahead to about the middle of the car; that deceased suddenly appeared passing out by the lady who was entering the car, and ran in a staggering manner as though out of balance into the path of his automobile; that he immediately sounded his horn, threw on his brake, and swerved to the left, but deceased ran into the automobile somewhere about the center or rear and out of his line of vision. He then ran about the length of the car and stopped over next to the curb. He got out and rendered first aid to deceased. He stated that the death was caused by a V-shaped wound on the left side of the head; that no part of the automobile would have made this character of wound and gave as his opinion that it was caused by the corner of a brick when deceased's head struck the street. The brick paving at this point is very rough and uneven.

For a reversal of the judgment in favor of appellee railway company, it is urged that the court erred in peremptorily instructing the jury to find for the company. A determination of this question, of course, depends upon whether the company owed any duty to Mr. Trout after he left the point where he alighted from its car and started across the street. When he boarded the car at Cliffside and became a passenger of the company, the relation thereby created between them imposed upon the company the duty to use a high degree of care for his safety as long as it continued. Weidner v. Otter, 171 Ky. 167, 188 S. W. 335. And that relationship and duty continued until he had alighted from the car and reached a place of safety. Louisville Railway Co. v. Kennedy, 162 Ky. 560, 172 S. W. 970, Ann. Cas. 1916E, 996.

There is a prevailing rule in many jurisdictions that ordinarily a passenger on a street car ceases to be such when he steps from the car onto the street. Terre Haute, I. & E. Traction Co. v. Evans, 87 Ind. App. 324, 161 N. E. 671; Ruddy v. Ingebret, 164 Minn. 40, 204 N. W. 630, 44 A. L. R. 159, and cases cited in opinion and annotations. However, in a determination of this appeal, it is unnecessary to approve or disapprove any rule relative to the duty of the railway company to afford the passenger a safe place in which to alight from the car or to give warning where a passenger is about to alight in the path of an on-coming automobile or other vehicle using the street, since no such case is presented here.

The evidence is overwhelming that Trout did alight from the car in a place of safety and not in the path of any automobile, so under any rule to which our attention has been called or which our research has disclosed, the relation of carrier and passenger terminated and the railway company thereafter owed to him no other or further duty than it owed to any other pedestrian or individual upon the street. To say that after he had alighted in a place of safety it was further incumbent upon the company to see that he crossed the street with safety, would so impair and retard traffic as to render the street and interurban railway practically useless.

The case of Louisville Railway Company v. Mitchell, 138 Ky. 190, 127 S. W. 770, has no application here, as in that instance the passenger alighting walked around the rear end of the car and was struck by another car of the company coming from the opposite direction. If, in this

instance, Trout had walked around the rear end of the car and had been struck by a west-bound car of the company on the spur track, an entirely different case would be presented, leaving a question of negligence or contributory negligence of the respective parties to be presented to a jury; but all of the evidence indicates that he left a place of safety and walked 9 or 10 feet across the street and directly into the path of Dr. Prichard's automobile.

The record does not disclose a violation of any duty that the railway company owed to Mr. Trout or any act or omission upon its part that in any way contributed to his injuries. This being true, it necessarily follows that the court did not err in instructing the jury to find for the company.

In insisting on a reversal of the judgment as to appellee Prichard, it is urged by counsel for appellant that the court erred in refusing to give instructions Nos. A and B, offered by appellant, and in giving instruction No. 1. It is first asserted by counsel that instruction No. 1 is erroneous, in that it did not impose upon appellee Prichard the duty of bringing his automobile to a stop when he approached the point where the car of the railway company had stopped to receive or discharge passengers—a duty which instruction A offered by appellant imposed upon him. In support of this contention, section 2739g-46, Kentucky Statutes, and cases from foreign jurisdictions, are cited. Counsel very frankly admit that the statute cited does not directly apply here, but insist that the same principle is involved and should be given application. This section applies specifically where the car is "traveling upon rails embedded or placed in the center or approximate center of a public highway." In this instance, the tracks were not in or upon any part of the street, and it is obvious that the statute was not intended to apply in such circumstances. All the cases from other jurisdictions cited by counsel involve violation of a statute similar to ours.

As a second ground for reversal, it is urged that instruction No. 1 only imposes upon appellee Prichard the duty of exercising ordinary care when it was his duty to exercise very great care, a requirement embodied in instruction B offered by appellant. The status of appellant's decedent in crossing the street was the same

as that of any other pedestrian, and the same duties and obligations existed as between him and Dr. Prichard as does generally between motorist and pedestrian. In addition to complying with regulatory statutes in the use of his automobile upon the highway, it was the duty of appellee Prichard to use ordinary care to avoid injuring Mr. Trout, and that includes within its scope and meaning such care as is ordinarily exercised by reasonably prudent persons in similar circumstances. Chaney v. Holliday's Administrator, 235 Ky. 610, 31 S. W. (2d) 926; Jackson's Administrator v. Rose, 239 Ky. 754, 40 S. W. (2d) 343.

The common law imposes upon the operator of an automobile the duty of exercising ordinary care, and no greater or higher degree of care is required of him unless it is imposed by statute. 42 C. J. 879. In attempting to cross the street, it was the duty of Mr. Trout to use ordinary care to learn of the approach of Dr. Prichard's automobile and to avoid being struck by it. Jackson's Administrator v. Rose, supra.

Instruction No. 1 is not erroneous in the particular urged by counsel, and in all other respects it is substantially the same as the instruction offered by appellant.

In the case of Knecht v. Buckschorn et ux., 233 Ky. 329, 25 S. W. (2d) 727, 729, where a small boy left a place of safety and ran into a passing automobile, this court said:

"The evidence in this case showed that the little boy left the sidewalk and ran immediately into the passing car, with no opportunity whatever afforded the driver to avoid it. The circuit court correctly concluded that there was not sufficient evidence to warrant submission of the case to the jury."

In essential features this case bears such similarity to the Knecht case as to justify the conclusion that it might have terminated in the same way. But it is unnecessary to determine that question, since a jury found for appellee Prichard under an instruction substantially the same as those offered by appellant, except for modifications hereinbefore approved.

Judgment affirmed.